## Hartford Fire Insurance Company v. Henry C. Tewes.

### Gen. No. 4,748.

1. CANCELLATION—*provision concerning notice of, construed.* A provision which concerns the privilege upon the part of the company to cancel upon five days' notice, means actual and not constructive notice.

2. CANCELLATION—*what not notice of.* Notice of cancellation given to one whom the insured has authorized to procure the insurance sought to be canceled, is not notice to the insured.

3. CANCELLATION—*when notice of, begins to run.* Where the policy gives the company the privilege of cancellation upon five days' notice to the insured, the five days begin to run from the receipt of the notice by the insured.

4. CANCELLATION—*when return of premium essential to.* The return of the unearned premium is essential to a cancellation by the company where the policy, among other things, provides "when this policy is canceled by this company by giving notice, it shall retain only the *pro rata* premium."

5. CANCELLATION—*effect of silence following notice of, to insured.* The silence of the insured upon receipt of notice of cancellation, which silence was for but a short period, does not operate as a recognition of the cancellation where the same is not made pursuant to the terms of the policy.

6. CANCELLATION—*what does not establish acquiescence in.* Acquiescence in cancellation sought to be made by the company pursuant to the policy, is not established against the insured, if not in conformity with the terms of the policy, by virtue of his

commencing action upon other policies, obtained for him by one acting initially without authority as substitutes for the policy so sought to be cancelled.

7. INSURANCE—*how policy construed.* If a policy of insurance is susceptible of two constructions, that one is adopted which is most favorable to the insured.

Action of assumpsit. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the October term, 1906.. Affirmed. Opinion filed March 13, 1907.

BARGER & HICKS, for appellant.

WHEELER, SILBER & ISAACS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On May 24, 1905, appellant issued a policy insuring appellee for one year in the sum of $2,000 against loss by fire of certain ice in an ice house on the north shore of Silver Lake, Kenosha county, Wisconsin. On July 13, 1905, the building and its contents were destroyed by fire. Appellee made proofs of loss. Payment was refused on the ground that the policy had been cancelled before the fire. Appellee brought this suit upon the policy. Defendant pleaded the general issue, with notice in writing of special matter relied upon in defense, the only such matter relied upon here being that the policy was cancelled before the fire. At the close of the evidence at the trial the court denied a motion by appellant to exclude the evidence and direct a verdict for defendant, and refused an instruction to that effect, and refused two instructions requested by appellant upon the facts, and gave an instruction requested by appellee to find for appellee and to assess his damages at $1,951. Such a verdict was returned, motions by appellant for a new trial and in arrest were denied, and appellee had judgment upon the verdict, from which judgment defendant below prosecutes this appeal. The refusal to give the two instructions upon

the facts requested by appellant is assigned for error, but the written motion for a new trial set forth the grounds of the motion and did not include the refusal of said two instructions, and their refusal was thereby waived, and that alleged error is not argued here. It is conceded that the policy was issued to appellee by appellant, and that the premium was paid by him, that the property covered thereby was destroyed by fire within the term named in the policy, that proper proofs of loss were furnished, and that the amount of the verdict was required by the proofs if appellee was entitled to recover. It is contended by appellant that the policy was cancelled before the fire, either pursuant to the terms of the policy or by agreement, express or implied, and that if the original cancellation was defective, it was ratified by appellee. Unless there was proof upon which the jury could reasonably find some one of these propositions for appellant, the direction to the jury was right. Appellant concedes that the facts are undisputed, and urges that we should reverse and not remand the cause.

Appellee lived in Chicago. Just prior to the issue of this policy he applied to William E. Vandeventer, of Chicago, to place $6,000 of insurance on this ice in Wisconsin. Vandeventer was an insurance broker, and Walter Schroeder, of Milwaukee, was his Wisconsin correspondent. As the property was in Wisconsin, the policies could not be written in Illinois. Vandeventer therefore applied to Schroeder, and the latter wrote the policy in question (which for some reason was called a New York Underwriters' policy in the correspondence and testimony), and also wrote three other policies in other companies, the four aggregating $6,000. The policies were delivered by Vandeventer to appellee, but no personal interview then took place. Appellee never saw Vandeventer or sent any letter or word to him from the time he directed Vandeventer to procure this insurance till after the fire. Appellee never received any communication from Vandeventer

between the time these policies were delivered and
the fire, except the letter hereinafter referred to,
dated July 8th and received by appellee July 10th,
nor did he receive any other communication from ap-
pellant during that time. At the time appellee ordered
from Vandeventer $6,000 on the ice, he gave Vande-
venter no other direction. He said nothing indicating
that Vandeventer should keep the insurance in force.
Vandeventer had once before this time procured in-
surance for appellee on the ice house. These two were
the only transactions they had ever had with each other.
Vandeventer had never received any notices of can-
cellation for appellee. We hold that under the evi-
dence Vandeventer's relations with appellee were
ended when appellee received these four policies and
paid the premium thereon.

On June 30th Schroeder wrote Vandeventer asking
the cancellation of this policy, and asking Vande-
venter to return the policy for cancellation without
delay. This was under the letterhead of "Chas.
Schroeder & Son," of which Walter seems to have
been a member. On July 1st Schroeder & Son wrote
Vandeventer a like letter asking the cancellation of
another policy for $1,000 they had issued in the Eagle
Fire Company on the same property, and asking that
the policy be forwarded by return mail. Schroeder
either thereby made Vandeventer the agent of appel-
lant and the Eagle to take the steps necessary to
effect the cancellation of these policies, or he wrote
Vandeventer under the mistaken impression that Van-
deventer was appellee's agent, or, Schroeder being
under the proof Vandeventer's Wisconsin correspond-
ent, he did this to give Vandeventer an opportunity
to protect his own business interests. As Vandeventer
and Schroeder each had a percentage of the premium
appellee paid appellant for the insurance, Schroeder
was probably actuated by the latter motive. The
policy contained these provisions: "This policy shall
be cancelled at any time at the request of the insured;

or by the company by giving five days' notice of such cancellation. * * * If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice, it shall retain only the *pro rata* premium." We do not doubt that the five days' notice required by the company meant a notice to the person insured, and meant actual and not constructive notice. It was the intention that the insured should know that his policy was to be cancelled, so as to give him time to determine what course to pursue and to take such measures as he saw fit for his own protection. Potomac Ins. Co. v. Atwood, 118 Ill. App. 349. As Vandeventer's agency extended only to the procurement of the insurance, and that had been completed long before June 30th, notice to him on June 30th of an intention to cancel the policy was not notice to appellee. Grace v. Am. Central Ins. Co., 109 U. S. 278. On July 5th Vandeventer wrote Schroeder & Son, acknowledging their letters asking cancellation of the two policies, saying he would call for them shortly and return them, and adding: "In the meantime will you kindly, if possible, replace this business in other companies for me." On July 8th Vandeventer wrote Schroeder & Son that he had that day requested appellee to at once return said two policies for cancellation, but that appellee was not in the city; and that he, Vandeventer, had advised appellee that said policies were to be considered as cancelled from and after three days from that date. Vandeventer also said in that letter that he had replaced $1,500 of that insurance, and in a postscript that he had secured the entire $3,000, and asked them to make no further efforts to secure additional insurance on the risk as the line was full. In fact, Vandeventer had taken such steps that a policy of the Fire Association

of Philadelphia, insuring appellee on this ice from July 5th for $1,500, was executed under date of July 8th, and a policy of the North British & Mercantile Insurance Company, insuring appellee on this ice from July 7th for $1,500, was executed under date of July 7th, and Vandeventer at some time thereafter paid the premiums on these policies, but these policies did not reach Vandeventer till about July 17th, and appellee had never requested Vandeventer to procure these or any other such policies, and they were never delivered or offered to appellee and he never paid premiums thereon. In all this there was nothing which appellee had authorized or requested, or of which he had any notice before the fire, except the notice given by Vandeventer's letter to appellee of July 8th.

On July 8th Vandeventer wrote appellee a letter in which he said he inclosed a letter from Schroeder & Son calling for cancellation of the policies issued by appellant and the Eagle; and he therein told appellee to consider them cancelled from and after three days from that date and to return the policies at once; that he had placed $1,500 in the Fire Association of Philadelphia and hoped to get the rest that day; and in a postscript he said he had secured the other $1,500 in the North British & Mercantile. Appellee received this letter on July 10th. He testified that it did not contain the letter from Schroeder & Son which purported to be enclosed therein. Under the authorities, the mere mailing of this notice did not give notice to appellee, nor could appellant change the contract requiring five days' notice, and make a notice effective in three days. It is very doubtful whether appellant can be heard to say that this was notice by it to appellee of a proposed cancellation. We have shown that Vandeventer was not appellee's agent. Appellant insists that he was not its agent. If so, then this was not a notice from any one authorized to give it, but a letter from a stranger to the transaction telling appellee that he had learned that appellant intended

to cancel the policy; or it was a letter from one who erroneously supposed he represented one party or the other. Appellant could not establish that it had given the required notice by proving that some one having no authority from either party had told appellee that appellant had decided to cancel the policy. It would not be sufficient to show that appellee had read in a letter from a stranger that appellant had elected to cancel. But let us suppose that the legal effect of the letter of June 30th from Walter Schroeder to Vandeventer was to make the latter appellant's agent to effect a cancellation of this policy. Vandeventer did not attempt to even mail such notice to appellee until July 8th, though their places of business were but a few blocks apart, and appellee did not receive it till the 10th. Neither appellant nor its agent could substitute three days' notice for the five required by the contract, but if it could the three days would not begin to run till appellee received the letter, and in no event could the policy be considered cancelled under that letter until "from and after three days from" the date of its reception. The fire took place at 1 A. M. of July 13th, within even that three days. But appellee was entitled to five days' notice of the cancellation, and the fire took place before the policy could cease under the contract, unless appellee agreed to a speedier cancellation, and there is no claim that the proof shows such agreement except by the inference hereinafter discussed.

Appellee paid appellant $70 premium for this insurance for one year. The policy had only run from May 24th to July 10th, when appellee received the letter upon which appellant relies as effecting a cancellation at its instance. It did not return or offer to return the unearned premium. Appellant claims that under the language above quoted from the policy a return of the unearned premium was not necessary to effect a cancellation, and that it was not liable to pay that unearned premium when it cancelled the policy

or at any later time till appellee should surrender the policy. It claims that it had a right to cancel the policy and retain the money appellee had paid for protection from fire for the whole year. The policy is prepared by the company, and its language is to be construed against the company and so as to give the protection which was the object of the contract. If a clause in the policy is susceptible to two interpretations, that one will be adopted which is most favorable to the assured. Terwilliger v. Masonic Accident Assn., 197 Ill. 9. The latter part of the clause above quoted from the policy relating to the return of the premium is that "When this policy is cancelled by this company by giving notice, it shall *retain* only the *pro rata* premium." It is a fair interpretation of this language to hold that it implies and means that when the policy is cancelled by the action of the company it shall return all the premium paid except the *pro rata* part for the period for which the insurance has been in force. Hence, the return of the unearned premium is essential to cancellation, for it would be contrary to well-settled legal principles that appellant should be permitted to escape future liability by merely saying it has elected to be bound no longer, while retaining the money it received and for which it agreed to be liable for a longer period. In Peoria M. & F. Ins. Co. v. Botto, 47 Ill. 516, the policy said: "It shall be optional with the company to cancel the policy, in which case the company will refund the premium for the unexpired time." The company delivered to the assured a written notice of cancellation, in which it asked him to call and receive his return premium on surrendering the policy. The company proved that it had the money ready to pay him, and that its agent called at the assured's place of business several times to ask for the policy and pay him the premium, but did not find him in. The court held that the power to cancel the policy did not relieve the company from the obligation any other party to a contract

is under when cancellation has been determined upon, to restore whatever had been obtained by the contract; that it was incumbent upon this insurance company, under that policy, to tender the unearned premium with the notice of cancellation; that the tender must be held a condition precedent, so that the company may not have the use of the money of the assured after cancellation, and that he may have it with which to effect new insurance. In Aetna Ins. Co. v. Maguire, 51 Ill. 342, the policy permitted the company to cancel it, after notice to the assured of its intention to do so, ''in which case the company will refund the premium for the unexpired term.'' The court said that there could be no cancellation of that policy without a return of the unearned premium; that the act of refunding and of cancellation must be simultaneous; that there was no obligation of the assured to go to the place of business of the insurance company and await its pleasure, but that when it determines to cancel a policy it should tender the unearned premium, and that till that was done there could not be a cancellation. We held to the same effect, and cited other authorities, in Hartford Fire Ins. Co. v. McKenzie, 70 Ill. App. 615, 619. The doctrine of that case was not rejected in Larson v. Thuringia Ins. Co., 208 Ill. 166, 172, but it was held not in point because of the different facts in the two cases. The dissenting opinion in Tisdell v. New Hampshire Fire Ins. Co., 155 N. Y. 163, shows that the policy there involved contained the same provisions as to cancellation as the policy before us. The majority of the court there held that, under that contract, it was necessary for the company to refund or tender the unearned premium, in addition to giving a notice of cancellation, in order to terminate the policy. In that case the company had stated in the notice of cancellation that the unearned premium would be returned to the assured by a certain agent at a certain street and number. It was held that the company was bound to find the assured and

tender him the whole amount due. There are some authorities holding otherwise, but we are of opinion that it is in harmony with the general course of judicial decisions in insurance cases in this state that this policy should be construed to require the return or tender of the unearned premium as an essential element of a cancellation by the company. Therefore this insurance was not cancelled.

But when appellee, on July 10th, received Vandeventer's letter of July 8th, he did not answer it, and he did nothing up to the time of the fire. It is argued that by this silence he consented that the cancellation should take effect, without the five days' notice, and without the return of the unearned premium, and consented that the new policies Vandeventer had ordered should take the place of appellant's policy and of the Eagle. Under the facts in the case, we do not think appellee's mere silence for three days can produce such important results. He knew Vandeventer was not his agent, and had no authority to receive notice of cancellation or waive any of his rights, and had no authority to secure other insurance for him. If he supposed Vandeventer to be an agent for appellant to effect cancellation he knew the proposed cancellation in three days could not be effected, and that appellant must first tender him the unearned premium. He knew that Vandeventer's letter could not form the basis for a cancellation. He had a right to wait for appellant to do what the contract required from appellant to cancel the policy. His policy was still in force and not affected by anything that had been done. It was not necessary for him to point out to appellant or to Vandeventer the defects in the efforts to cancel. He could stand upon his rights under the contract. Also, when he found they were not taking the course the contract pointed out for cancellation he had a right to take time to consider what the meaning and effect of this letter really was. There was nothing in the previous relations between appellee and Vande-

venter which gave the latter any authority to put appellee in a place where he must instantly act or forfeit his contract rights. Appellant contends that Vandeventer was not its agent. He was not appellee's agent. Vandeventer was working for what he thought were his own business interests. We fail to see how appellant can have any advantage from the fact that appellee failed for three days to reply to a letter which Vandeventer wrote him in an effort to do business with him.

Appellee in his proofs of loss stated the names of the two companies which had placed the new policies in Vandeventer's hands, and the dates and amounts of those policies. Appellant argues that appellee thereby approved of Vandeventer's act in procuring them, and consented that those policies take the place of appellant's and of the Eagle, and thereby consented to the cancellation. Appellant's policy required appellee, in his proofs of loss, to state "all other insurance, whether valid or not, covering any of said property," and also provided that appellant should not be liable for a greater proportion of any loss than the amount thereby insured bore to the whole insurance, whether valid or not. Before these proofs of loss were made appellee had learned of these policies in the hands of Vandeventer. If he omitted a statement of them from his proofs of loss, he might thereby furnish a defense to appellant. He did the only prudent thing—complied exactly with the requirements of appellant's policy as to the contents of proofs of loss.

Appellee brought suits upon both the old and the new policies. Appellant argues that by suing on the new policies he elected to treat them as valid and as taking the place of the old, and thereby conceded that the old were not in force. The companies who issued the new policies could with equal logic say that as appellee sued appellant and the Eagle he thereby elected to treat the old policies as in force and the attempted cancellation as void; and thereby conceded

that he had not accepted the new policies and that they were not in force. By this reasoning, each insurance company would be able to show that by suing each he had released all. On the contrary, appellee could not know what proof any one insurance company might be able to produce, or what the result of suit against any one might be, and he could not safely wait the termination of a suit on one policy. Prudence require that he-sue each, and he had a right to pursue that course.

The jury could not have found for appellant under the proof, and the court properly directed a verdict.

The judgment is, therefore, affirmed.

*Affirmed.*