## Haffler v. McKinney.

Nov. 21, 1941.

Davis M. Howerton for appellant.

James C. Clay and Lester Hogge for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In August, 1935, appellee and the defendant below, A. B. McKinney, resided in Morehead, Rowan County, Kentucky, and was the owner of a lot in the business section of the city upon which was erected a brick business house with some dwelling apartments above the first story, the latter being used for business purposes. He concluded to not only remodel his present building, but to construct an additional store room on the adjoining vacant portion of his lot, and to make other improvements. Pursuant thereto he contacted appellant and plaintiff below, Whayne W. Haffler, who was then and for many years prior thereto had been a qualified architect located in the city of Lexington, Kentucky. Plaintiff first prepared sketches, and later he prepared specifications, blueprints and all necessary preliminary work required of him, and furnished a copy or copies to the defendant, and others to contractors for the obtention of bids to complete the job. The lowest bid was made by a contractor residing in Ashland, Kentucky, and it was above $17,000, without an alternative proposition to construct an extension to the old store room on the portion of the lot back of it, but the bidder named a price for such alternative work of above $3,000 or an aggregate sum for all of the contemplated alterations and additions of more than $20,000.

In the meantime plaintiff was negotiating with a local contractor in Morehead, a friend of his named L. H. Boggess, who estimated the cost of the entire work (apparently excluding the extension of the old building) at $16,694.54, but Boggess testified that up to the time of making that estimate he had not seen plaintiff's plans and specifications, although, as we gather from the evidence, they had been sent to defendant before the witness Boggess finally submitted his estimate based upon information obtained from defendant. The latter retained the plans and never accepted any bid from any contractor and, therefore, never procured the contemplated work to be done.

On February 8, 1937, plaintiff filed this action against defendant in the Rowan circuit court to recover judgment against him for the sum of $676, which he alleged was a reasonable fee for the work he had done and the time devoted in the preparation of plans and specifications—all of which he did (as averred) at the request of defendant. The answer was a formal denial, followed by an affirmative separate paragraph alleging that "the plaintiff assured him that he could draw up plans and specifications to do said repairing on said building and rooms to cost not exceeding $10,000, and the plaintiff assured him that he could draw such plans and specifications to do the work of repairing said store house and rooms at a cost not exceeding said sum and this defendant advised him at the time that he, defendant, could not do this work if it cost more than $10,000." He then alleged that no bid was obtained for the completion of the entire contemplated work for less than $20,000, and that he abandoned the idea of making the improvements and declined to accept any of the tendered bids. A reply and following pleadings made the issues, and upon trial the jury, under the instructions of the court, returned a verdict for defendant, followed by a judgment dismissing plaintiff's petition, to reverse which he prosecutes this appeal after his motion for a new trial was overruled.

A number of grounds were relied on in his motion, but practically all of them are abandoned on this appeal, except the alleged error of the court in overruling his motion for a peremptory instruction directing the return of a verdict in his favor for the amount sued for, since no attack was made upon its reasonableness. We have concluded that the court should have sustained that motion, and because of which we will devote no part of this opinion to a discussion of any other ground relied on, although it might be said that we exceedingly doubt if any of them, singly or in the aggregate, is sufficient to authorize a reversal of the judgment.

The Court by its instruction No. 1 submitted to the jury only one factual issue, which was, that a verdict should be returned for plaintiff for the amount claimed in his petition, unless the jury should believe from the evidence "that at the time the plaintiff contracted with the defendant for the preparation of the plans and specifications mentioned in the evidence that it was mutually

understood and agreed between them that the costs of the improvements covered by said plans and specifications as finally completed was not to exceed $10,000.00, and if you further believe from the evidence that the costs of the improvements contemplated by said plans and specifications exceeded the sum of $10,000.00 and in which event you will find for the defendant.''

It will thus be seen that the whole case was made to turn on the sole defense of whether or not plaintiff recommended to defendant that the cost of the repairs and additions to defendant's building—as finally settled and outlined in the blueprints and specifications furnished by plaintiff—would not exceed $10,000 when that figure was only about one-half of what the cost eventually proved to be. That issue, as will be seen, is exclusively a factual one to be determined by the evidence heard at the trial, and which embraces all circumstantial evidence as well as express and positive proof. In determining that question we will not encumber the opinion with a recitation of the testimony of each witness heard at the trial, nor will we refer to *all* of the twenty-five or thirty letters and telegrams passing between the parties, but only to those bearing upon the single issue submitted to the jury for its determination.

At the beginning of the negotiations between plaintiff and defendant with reference to the drawing of plans for the remodeling of plaintiff's buildings and enlarging them, plaintiff as a result of his first visit to the premises made some sketches, but which called for much less work and less extensive remodeling than what was finally agreed on for his architectural submission to contractors for bids. Sometime following the first submitted sketches for the contemplated alterations, plaintiff expressed the belief that the work then under contemplation would probably cost between $7,000 or $8,000, and which estimate he communicated to defendant and testified to at the trial, but as time went on additional alterations and extensions were added to the first contemplated plans, and plaintiff's finally submitted blueprints and specifications embraced not merely the first submitted plans, but also the additions and alterations that were later made. As we have hereinbefore stated, many letters passed between the parties, as well as some telegrams, and also inter partes meetings and conversations. On March 17, 1936, defendant wrote

plaintiff, saying: "Our (lot) line takes in all the walk on Fairbank and Main St. So we have nothing to worry about there. We would like to hear from you in regard to the estimate cost of building as soon as possible."

The next day (March 18th) plaintiff answered that letter, in which he stated, inter alia: "I estimate that the building will cost around sixteen thousand ($16,000.00) dollars." He also in that same letter called for certain data to be furnished him by defendant, which was done a short time thereafter, and as soon as it could be obtained. The request for that data was never made except in that letter, and the wonder is why defendant knew that plaintiff desired that information, unless he obtained it from plaintiff's letter, but which he says he did not receive. Some days after writing that letter plaintiff wrote defendant another one in which he stated, inter alia, that: "I believe we have as economical a layout as possible. * * * If there are any changes that you would like to make on the plans, will you please write at once, and, if not we shall proceed as rapidly as possible." Some changes were made later before the blueprints were completed, after which defendant was sent a copy and others were distributed to contractors, as hereinbefore stated. Plaintiff introduced a carbon copy of the letter of March 18, 1936 (and all others written by him), in which he estimated the cost of the then contemplated work at $16,000. Defendant in testifying about its receipt was asked by his counsel: "Q. I hand you what is purported to be a copy of a letter that was written to you March 18 by Mr. Haffller and get you to examine that letter." His answer was: "I do not remember that." He then testified that he never received the original, although plaintiff positively testified that it was addressed to him, put in a sealed envelope and stamped with the proper postage and mailed, and defendant does not deny but that he received *every* other one of the numerous letters written to him by plaintiff. It also appears that the crucial and decisive letter in the determination of this litigation was the only one that he failed to receive. It is familiar law that it will be presumed that a letter so addressed and mailed is received by the addressee, but the latter may show that it was not received by him. Perhaps, therefore, defendant's denial that he received plaintiff's letter of March 18, 1936, was sufficient to overcome the legal presumption that he did receive it, although defendant, when first

asked about it, did not positively deny receiving it, but only said: "I do not remember that."

Evidence, as is well known to the profession, is devisible into classes, two of which are: Direct or express testimony directed to the contested issues, and circumstantial testimony bearing upon the same issues. In the case of Perry's Adm'r'x v. Inter-Southern Life Insurance Company, 248 Ky. 491, 58 S. W. (2d) 906, we said: "Concurrence of well-authenticated circumstances is stronger evidence than positive testimony unconfirmed by circumstances." And in the case of Dyche v. Scoville, 270 Ky. 196, 109 S. W. (2d) 581, 582, it was stated that: "Neither judge nor jury need accept witnesses' literal statements as true if they contain improbabilities, or if reasonable grounds exist for concluding that they are not wholly true." Other cases confirming the rule that well-authenticated circumstances, unerringly establishing the principal fact to which they relate, should be accepted as against doubtful positive testimony to the contrary may be found in volume 8 of West's Kentucky Digest, under the general subject of "Evidence" in Key Number System 587 and 588, and in Key Number System 590 of the supplement to volume 8 of that Digest the case of Hodges v. Daviess County, 285 Ky. 508, 148 S. W. (2d) 697, is referred to as establishing the principle that courts and juries are not inclined to give the same credit and weight to the testimony of interested witnesses as is given to the testimony of disinterested ones or to other relevant testimony in the case.

The next inquiry is, what circumstantial evidence does the record contain refuting defendant's doubtful denial that he received a copy of plaintiff's letter of date March 18, 1936? To begin with, we have the presumption, referred to supra, that he did receive it. We have a response from plaintiff some days after the date of that letter sending to plaintiff the data and information requested in the letter which defendant says he did not receive. Plaintiff is shown to be a qualified and efficient architect, and the improbability that he—possessing such qualifications—would mistakenly estimate the cost of a job of work of that size to the extent of one-half of its actual cost is most improbable. We have defendant inquiring, at a somewhat late hour in the negotiations, what plaintiff's estimation of the cost would

be, followed by the latter's letter which defendant claims he did not receive. Moreover, one Lane, a son-in-law of defendant, testified in the case and stated that he was more or less interested in the repairs contemplated by his father-in-law, and in some manner he had gotten the impression that $16,000 was the estimated cost of the work to be done. The witness Boggess testified in the case to the effect that defendant conversed with him about the improvements on the basis decided that the cost should not exceed $16,000. Witness had, perhaps, not seen plaintiff's plans at that time, but he later became familiar with them, and on June 27, 1936, wrote plaintiff a letter in which he said, inter alia: "I made McKinney an estimate of this job before you completed your plans and my estimate was $16,694.54 and your plans and specifications are for a nicer and better job than I had figured, and since I made this estimate there has been quite a bit of an advance in material and also in labor cost, so you see that it is going to be hard to get this down to $16,000.00, which is the limit on this job."

That letter was not objected to and its incompetency, if it were incompetent, was thereby waived. Clearly, the writer of it obtained the figures "$16,000.-00," either from defendant or from plaintiff's letter to defendant, but which the latter denies receiving. Defendant not having accepted any of the bids of contractors plaintiff wrote him on September 1, 1936, enclosing his account for the work he had done which was the amount sued for herein, and requested its payment, but defendant failed to respond thereto or to answer the letter. Similar requests were made by repeated letters of plaintiff to defendant with like results. After failing to hear from defendant, plaintiff turned his claim over to his attorneys for collection, and on December 7, 1936, they wrote a letter to defendant demanding payment thereof, but they received no response whatever. Finally counsel stated in their last letter that "in the event payment is not made shortly, we will be compelled to institute suit." On December 21, 1936, defendant wrote plaintiff a letter in which he acknowledged receiving his various requests for payment and, at the same time, returned the copy of the plans and specifications furnished him by plaintiff. In his letter he said that the plans prescribed for his building to cost "more money to be spent than I expected to pay. They (blueprints and

specifications) are, therefore, useless to me and I am this day returning them to you via express.'' This suit was later filed to recover for the value of plaintiff's services.

In addition to the facts and circumstances we have already stated, the lowest bidder hereinbefore referred to was one Jay Shortridge. He saw defendant sometime following the submission of his and his partner's bid, and conversed with him about the job, and in which defendant said: ''That we had a good low bid and that he would notify us just as soon as things got cleared up''—which clearing up consisted of matters which defendant told the witness were necessary to be understood before the bid was let and the contemplated work commenced. Defendant made no statement to any contractor that the cost of the contemplated work should not exceed the amount of $10,000, nor did he make any such statement to plaintiff or his attorneys throughout the period they were trying to collect the account, as a reason for abandoning the project.

Surely, the circumstances that we have related—together with some other less forcible ones found in the record—unerringly sustain the conclusion that defendant did receive plaintiff's letter of March 18, 1936, in which it was positively stated that the repairs and remodeling that defendant then contemplated making would cost, according to plaintiff's estimate, around $16,000. However, additions were thereafter made and completed blueprints and specifications were thereafter prepared and furnished, and never at any time—though occasions therefor were numerous—did defendant make any such contention as the one he relies on in defense of this action. This is a clear case where the circumstantial facts uncontradictedly proven in the case overwhelmed defendant's doubtful denial of his receipt of plaintiff's letter giving the $16,000 estimate therein contained. In the circumstances defendant's somewhat hesitating denial, in only monosyllabic terms, created at most only a scintilla insufficient to overcome the presumption of the receipt of the letter of plaintiff.

In the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, we overruled the former practice prevailing in this jurisdiction requiring the submission of facts to the jury where there was only a scin-

tilla on one side, and where the court would set aside the verdict in favor of that scintilla, upon the ground of insufficient evidence to sustain it. In the Nugent opinion we overruled all opinions adopting and approving that practice and said that in all cases where the court would be authorized under the testimony to set aside the verdict of the jury as being flagrantly against the evidence it became its duty to direct a verdict in favor of the opposing litigant. This, we conclude, is a clear case where the modified rule approved in the Nugent opinion should be applied.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial, and to direct a verdict in favor of plaintiff for the amount of his claim on another trial if there should be one, and if the evidence is substantially the same as that heard at the instant trial, and for other proceedings consistent with this opinion.