# Minary et ux. v. Hammond.

April 23, 1943.

Johnson & Johnson for appellants.

Gavin H. Cochran for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellee and plaintiff below, Stratton O. Hammond, sued appellants and defendants below, Alfred D. Minary and wife, Myra, for $2,120 fees alleged to be due him for certain architect's plans and specifications, and the labor in making them, which the petition averred were furnished defendants at their special instance and request. The trial resulted in a verdict for $2,000 in favor of the plaintiff, and from the judgment entered thereon defendants appeal.

Hammond was an architect in Louisville and the defendants being desirous of building a home arranged with him to draw plans for the house. The first thing Hammond did was to explain to them that his fee for drawing plans is 3% of the cost of the houses; 1% for specifications; 2% for supervision; and if they wanted

him to build the house in lieu of a general contractor, 4% would be added. As he only sued for fees for the four plans drawn and bids taken on two sets of them, we are concerned with but the first two items of his charges. Defendants do not complain of the rate of the charges, but it is their contention that plaintiff was not to be paid anything unless his plans could be executed for not exceeding $20,000 and were accepted by them, and as they never accepted any of the plans drawn by plaintiff, they were not indebted to him in any sum. It is argued by defendants that they only desired to build one house and in no event would they owe plaintiff for more than one set of plans.

Hammond's testimony is to the effect that he drew four sets of plans depicting four types of houses and he revised all but the first set. That Mrs. Minary could not make up her mind as to what type of house she wanted and was continually changing her mind and directing him to change the plans. The first plans depicted a $26,000 home for which he made a charge of 1%, or $260. That although Mrs. Minary had given him the floor plan of this house, she was not pleased with it and directed him to draw the plans of a second house for which she also furnished the floor plan. The second plans called for a $28,000 house and as plaintiff revised these plans at Mrs. Minary's request, he charged 1½%, or $420, for this work. She was not satisfied with this house and directed him to draw another set of plans somewhat similar to a house he had shown her. This third set met with her approval and she ordered him to take bids thereon. The bids amounted to $26,000 and for the plans and the detailing of them (furnishing specifications) for the purpose of receiving the bids, he charged 3%, or $780. That as $26,000 was more than they cared to put into a home, Mrs. Minary asked plaintiff to plan a house that would cost not more than $20,000. The plans he drew for this last mentioned house met with her approbation and at her direction he proceeded to take bids thereon which ran $22,000, for the reason, as plaintiff testified, that Mrs. Minary had him add certain luxuries not incorporated in the original plan. For these last plans which he detailed for bidding, he made a charge of 3%, or $660. Hammond further testified he did not charge full fees for any of the plans because defendants did not accept or use any of them and it was not necessary for him to fully complete any set which he drew.

The effect of defendants' testimony was that at the outset they informed plaintiff they would not invest more than $13,000 in a home and that he agreed to draw plans which would be acceptable to them for a house within that limit; that his first two plans were entirely unacceptable; that his third set met with their approval but the bids ran to $26,000, therefore they refused to accept them. But they did inform plaintiff they would raise the sum they were willing to invest in a home from $13,000 to $20,000, but would not exceed the latter figure. That in the fourth plans plaintiff had omitted certain features requisite for a home and when these were added the plans were acceptable but the bids taken thereon exceeded the $20,000 limit, hence they refuse to accept same. Defendants insist that as plaintiff produced no plans of a house acceptable to them which could be constructed within their limit of $20,000 they owed him nothing for his work.

Hammond started this work in October 1940 and continued it through May, 1941, and the evidence shows that the time he spent on each plan ranged from a low of 100 hours to a high of 350 hours. It is not denied that in a letter written Minary on April 19, 1941, he asked payment of "several hundred dollars on account." In another letter dated July 1, 1941, he again asked Minary "for a check." And by letter of July 30, 1941, addressed to both defendants, he told them they were attempting to include luxuries in their home which were not present in one costing as high as $100,000; that his fees to date amounting to $2120 must be paid; that if this letter was ignored as his others had been, he indicated he would bring suit. This letter was answered by defendants' attorney and suit followed.

This is primarily a fact case and there is a direct conflict in the evidence on the following issues: (a) Whether or not defendants informed plaintiff they would not put exceeding $13,000 in a home, which is admitted they raised to $20,000 on the last, or fourth, plans. (b) Did plaintiff's omission of ordinary requisites from the fourth plans, or defendants' addition thereto of expensive luxuries cause the house therein depicted to exceed $20,000? (c) Was the agreement between the parties that defendants were to pay nothing unless plaintiff drew plans that were acceptable by them, or was plaintiff to be paid for his work regardless of whether or not

defendants accepted and used any of the plans he drew? (d) As to whether or not they promised to pay plaintiff his fees for the first three sets of plans before he would start the fourth set, which fees he estimated to the defendants as being about $1200. (e) As to whether or not he would give them sufficient time in conferences, they insisting that he was always in a hurry and would confer but a few minutes, while he testified that at each of their many conferences they consumed his entire afternoon or evening.

Under this conflicting evidence the court instructed the jury in effect that if they believed defendants employed plaintiff to prepare plans for a house, or houses, and if he did so and received bids thereon they should find for him the reasonable value for his services; unless they further believed from the evidence that he was to prepare plans for a house, or houses, not to exceed in cost $20,000, in which event the jury would find for defendants. These instructions properly submitted the issues formed by the pleadings and evidence, and as plaintiff adduced testimony of two architects that his plans were well and efficiently prepared and his charges were reasonable, we are of the opinion that the evidence supports the verdict and there is no merit in defendants' contention that they were entitled to a peremptory instruction, or that the verdict is flagrantly against the evidence. The instant case is not greatly unlike Haffler v. McKinney, 288 Ky. 782, 157 S. W. (2d) 92, where it was held that the well-authenticated circumstances established the fact that the architect did not furnish plans under an agreement that the building they depicted could be constructed for not exceeding $10,000, and that the architect should recover for his services.

As this suit was based upon an oral contract for materials in excess of $500 sold and delivered, defendants insist that the contract comes within the Statute of Frauds, KRS 361.040. Admitting arguendo, but not deciding, that these plans come under the terms of "goods or choses in action" designated in the statute, yet the last clause in paragraph 2 of that section excepts them in providing that goods "manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business" do not come within the statute.

The argument that defendants only desired to build

one house and should not be compelled to pay for four sets of plans covering separate and distinct houses is met by saying that plaintiff adduced proof to show that defendants employed him to draw four sets of plans depicting four different houses.

Defendants further argue that the court erred in not permitting them to introduce the rules of the American Institute of Architects relating to the customs of the profession and its ethics after plaintiff had testified he was a member of that organization and abides by its rules. However, the issue involved in the instant case is whether or not the parties entered into an express contract and the court properly excluded the proffered evidence relative to the customs and ethics of the architects' organization. Nor is there any merit in defendants' contention that they should have been allowed to prove a typical written architects' contract which A. E. Weinedel had with a client, or to prove plaintiff had litigation with other clients and the result thereof, as such evidence has no place in this litigation and is clearly incompetent.

The judgment is affirmed.