**Eugene OSBORNE, Appellant,**

v.

**UNIGARD INDEMNITY
COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 21, 1986.

Thomas L. Rouse, Covington, for appellant.

Marc D. Dietz, Donald L. Stepner, Covington, for appellee.

Before CLAYTON, LESTER and MILLER, JJ.

CLAYTON, Judge.

This appeal arises from an action by an insured against an insurance company to recover under a fire insurance policy which was allegedly cancelled prior to the loss. The court below, relying upon the "mailbox rule," determined that the insured had failed to rebut the presumption that he had received written notice of cancellation. We affirm, given our interpretation of the mailbox rule as applied to the "giving written notice" language of the parties' contract of insurance. *See Pence Mortgage Company v. Stokes,* Ky.App., 559 S.W.2d 500, 506 (1977). Accordingly, we affirm.

On December 7, 1982, Osborne and Unigard Indemnity Company entered into a contract of fire insurance through Unigard's agent in Covington, Kentucky, Hammerlin and Associates. Under the terms of the policy, appellant's property at 814–816 Scott Street in Covington, was insured against loss by fire to a maximum amount of $100,000 from December 7, 1982, until December 7, 1983. Cancellation of this coverage by Unigard was provided for by the contract in language stating,

> This policy may be cancelled at any time by this Company *by giving to the insured a five days' written notice of cancellation* with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand.

(our emphasis).

Nowhere in its provisions did the contract provide for cancellation by mailing written notice to the insured at the address shown in the policy. Nor did the parties' agree-

ment state that mailing of notice shall be sufficient proof of notice. *See Woodard v. Calvert Fire Ins.*, Ky., 239 S.W.2d 267, 268 (1951). To the contrary, the sole remaining notice provision relating to cancellation required "giving ... [a designated] mortgagee a ten days' written notice of cancellation."

In September of 1983, Osborne left for Mexico where he resided until February 23, 1984. During his absence, appellant's cousin, Cossem Herrell, and his family, lived at appellant's mailing address in Ripley, Ohio. Herrell received Osborne's mail, paying certain bills from a checking account opened for that purpose and mailed "visibly important" mail to Mexico once a month. Other mail, including insurance mail, was simply accumulated for appellant's inspection upon his return. According to appellant's testimony, included with this accumulated mail was one premium due notice from Unigard.

Upon his return to Covington on February 23, 1984, Osborne returned to Ripley and picked up his accumulated mail. The following weekend, March 3rd and 4th, he repeated his trip to Ripley, again collecting his mail.

During the following week, on the evening of March 8, 1984, Osborne's property in Covington was damaged by fire. Upon attempting to file a claim at the Hammerlin agency on March 9, 1984, Osborne was informed that the policy in question had been cancelled. Notice of cancellation included in the record indicates on its face that it was mailed from Louisville on February 18, 1984. A copy of the envelope in which the notice apparently was mailed confirms this date. According to Laura Stoll, an employee of Hammerlin, she received a copy of the mailed notice on February 21, 1984.

Osborne, upon being informed of the cancellation, called Herrell in Ripley from the Hammerlin office asking that he examine the day's mail to determine if anything had arrived from the insurance company. Herrell then discovered the notice of cancellation from Unigard which he read to Os-

borne and Stoll in its entirety. According to the language of the notice,

> You will, therefore, please take notice that at the expiration of *10 (ten)* days from the receipt of this notice, unless surrender thereof to us be sooner made, the said policy will terminate and cease to be in force.

> Effective *March 1, 1984*, at ... 12:01 A.M. (Standard Time), we hereby cancel the above mentioned policy ... in accordance with the terms and conditions of the policy.

Later on March 12, 1984, a premium check from Osborne, dated March 7, 1984, arrived at Hammerlin. According to Osborne, this check was mailed in the evening of March 7. However, the envelope in which it arrived at Hammerlin was postmarked by the Cincinnati post office, March 9, 1984.

Following trial without jury on March 8, 1985, the circuit court entered its judgment based upon the testimony of Osborne and Herrell, certain stipulations by the parties regarding the above events, exhibits and depositions. In its findings, the trial court determined that mailing of the notice had been substantially proven. From that proof, it was next found that a presumption of receipt had been established along with the further presumption that the notice was received within seven days after mailing. Citing *Pence Mortgage Co. v. Stokes, supra*, the trial court then found that under the presumption, Osborne received notice on February 25, 1984. Evidence in rebuttal of this presumption was found to be insufficient with the lower court noting that the evidence showed Osborne to be lax in handling his mail.

On appeal to this Court, Osborne raises two arguments. First, appellant argues that the trial court clearly erred in finding that insufficient evidence had been presented to rebut the presumption of receipt. Second, Osborne maintains that the language of the contract, requiring *giving* notice rather than merely *mailing* notice, placed a more substantial burden of proof on appellee which it failed to meet. In response, Unigard maintains that the trial

court correctly found that coverage had lapsed as of December 7, 1983, and that any alleged renewal was effectively cancelled by mailing of the notice on February 18, 1984.

At the outset of our analysis, we reject appellee's response regarding expiration of the initial contract. The trial court specifically found in paragraph one of its findings that the policy in question had been renewed on appellant's request after the initial policy had expired. This finding is supported by Exhibit II, a photocopy of the policy accompanying appellant's complaint showing the policy's expiration date as "12/7/84." Moreover, the parties by stipulation filed in the record, have agreed,

> that the Unigard Indemnity Company's policy involved herein would have provided coverage for a portion of the loss but for the cancellation of the policy upon which the defendant herein relies.

Thus, the questions involved turn upon cancellation of the renewed policy and not expiration of the initial policy. When examining the issue of cancellation, we adhere to the long standing rule that cancellation may be had only upon strict compliance with the provisions of the contract. *Goodin v. General Accident Fire and Life Ass. Corp.*, Ky., 450 S.W.2d 252, 255 (1970). For decisions of other jurisdictions so holding, *see Trans-America Ins. Co. v. Wilson*, 262 Ala. 532, 80 So.2d 253 (1955); *St. Paul Fire & Marine Ins. Co. v. C.I.T. Corp.*, 55 Ga.App. 101, 189 S.E. 390 (1936); *Hartford Fire Ins. Co. v. Tewes*, 132 Ill.App. 321 (Ill.App.1907); *Duff v. Secured Fire & Marine Ins.*, 227 S.W.2d 257 (Tex.Civ.App. 1949). As this Court has previously recognized, insurance policies seldom employ identical words, phrases, or clauses and accordingly must each be interpreted as written and then applied to the facts of the case in which they are involved. *Woodard v. Calvert Fire Ins. Co.*, 239 S.W. at 268. In the absence of a statute to the contrary, the terms of the policy will be enforced as drawn. *Id.* at 269.

In the present appeal, no controlling statute applies. The recently enacted statute, KRS 304.20–320 relating to cancellation by the mailing of notice to the insured at his last known address, is not determinative as it was not in effect until July 15, 1986. We accordingly look solely to the present contract to resolve this controversy.

As noted above, the insurance agreement between Osborne and Unigard does not provide for notice of cancellation to be satisfied by mailing of such notice. Were that the case, this appeal obviously would be controlled by *Woodard* and *Goodin*. Under such circumstances, definite and specific proof of mailing of the notice in compliance with business usage would be sufficient to prove cancellation. *Goodin* 450 S.W. at 256–57. Such proof is present in the record via the certification of mailing on the face of the written notice, the postmark on the envelope of the notice, Laura Stoll's stipulated testimony regarding receipt of a copy of the cancellation notice on February 21, 1984, and the parties' stipulation regarding mailing of the notice on February 18, 1984.

However, the policy involved provides for cancellation "by *giving* to the insured five days written notice of cancellation...." (our emphasis). This language, and the burden of proof arising thereunder, has yet to be interpreted by Kentucky's appellate courts. The decision of this Court cited in the judgment, *Pence Mortgage Co. v. Stokes, supra*, unfortunately does not turn upon the pertinent language. The policy provision upon which *Pence* was decided was not the "giving notice" provision of the policy then involved (a provision whose material terms are identical to the present notice provision), but was instead a separate provision relating to cancellation at the expiration of the policy. *Pence*, 559 S.W.2d at 506. The decision does, however, indicate in its dicta that,

> Contract terms such as "giving" and "mailing" notice are well established in insurance law. The two words have significant differences as to the requirements for proof of receipt by a mortgagee or an insured. (See 64 A.L.R.2d 982, et seq.). When the policy requires "giv-

ing notice" to effect a cancellation, the insurance company has a strict burden of proof of *actual receipt* of notice by the intended recipients, as a condition precedent to any cancellation. Kentucky has not yet resolved the question of required proof for "giving notice," although generally, a presumption of receipt is recognized when mailing of a notice has been substantially proven. *See,* for example, *O'Daniel v. Michigan Mutual Liability Company,* 88 F.Supp.. 339 (D.C.Ky. 1950); *Globe Indemnity Company v. Daviess,* 251 Ky. 442, 65 S.W.2d 456 (1934); *Haffler v. McKinney,* 288 Ky. 782, 157 S.W.2d 92 (1942); and, *Beauchamp v. Com. ex. rel., Kentucky Bd. of Veterinary Examiners,* Ky., 243 S.W.2d 879 (1951).

*Id.* (our emphasis).

Unfortunately, none of the four decisions cited in the above-quoted dicta involve an insurance policy whose provisions call for giving notice of cancellation. However, our review of the judicial decisions of other jurisdictions examining the issue of proof sufficient to demonstrate actual receipt reveals that the so-called "mailbox rule," is applicable to disputes arising from contracts of insurance containing "giving notice" provisions. *See Citizens Ins. Co. v. LeMaster,* 99 Mich.App. 325, 298 N.W.2d 19, 20 (1980); *Campbell v. Royal Indemnity Co. of New York,* 256 Pa.Super. 312, 389 A.2d 1139, 1142–43 (1978); *Rocque v. Cooperative Fire Insurance of Vermont,* 140 Vt. 321, 438 A.2d 383, 386 (1981). *See also* Annot. 40 ALR 4th 867 (1985) *superseding* Annot. 64 ALR2d 982 (1959). Therefore, we reject appellant's latter argument that the contractual language involved necessitates a greater burden of proof excluding application of the presumptions arising under the mailbox rule. While "giving notice" provisions such as that presently involved do require proof of actual receipt, such proof may be satisfied through application of the presumptions created by the rule.

■■■ With regard to appellant's initial argument that he has presented sufficient proof to rebut the presumption of timely receipt, we again respectfully disagree. Appellant's testimony as to the untimely receipt of Unigard's notice does not *per se* rebut the presumption of timely receipt. While some jurisdictions do permit an addressee's uncontradicted testimony of non-receipt or untimely receipt to overcome the presumption, the majority rule holds that denial of receipt of the notice raises an issue of fact to be determined by the fact finder. 29 Am.Jur.2d *Evidence* § 198 (1967). Application of this majority rule has previously been made in *Haffler v. McKinney,* 288 Ky. 782, 157 S.W.2d 92, 95 (1942) wherein the presumption of receipt arising under the rule was held sufficient to withstand testimony that the defendant did not receive the letter involved. In the present appeal, substantial evidence clearly supports the lower court's finding that Osborne failed to present evidence sufficient to rebut the presumption of timely receipt. The trial court was not bound to accept appellant's testimony that notice did not arrive until March 9, 1984, the day immediately following the fire. *Haffler,* 157 S.W.2d at 95 (" 'Neither judge nor jury need accept witnesses' literal statements as true if they contain improbabilities, or if reasonable grounds exist for concluding that they are not wholly true.' "). Such testimony was inherently improbable given Hammerlin agency's timely receipt of its copy of the notice, the unusual manner in which appellant's mail was handled in his absence; the contradiction of the dates on appellant's premium check and the postmark on the envelope in which it was mailed; and evidence that appellant had additionally allowed a separate property of liability insurance on the same policy to be cancelled during his absence. In short, we conclude that the trial court did not clearly err in its findings nor in its application of the mailbox rule.

The judgment of the Kenton Circuit Court is affirmed.

All concur.