UNITED STATES, Appellee

v.

JOSEPH O'BRISKI, Jr., Private E-1, MANUEL ANTHONY TRAVERS, Private E-2, EUGENE R. TRAVERS, alias PETER PLANTZ, Jr., Private E-1, FRANCIS JOHN FIX, Jr., Private E-1, JAMES ALONZO CHEEKS, Private E-2, ROBERT RICHARD MURPHY, Sentenced Prisoner, and ARTHUR RAY-MOND GARCIA, Sentenced Prisoner, U. S. ARMY, Appellants

2 USCMA 361, 8 CMR 161

No. 1082

Decided March 30, 1953

 
 

LT. COL. James C. Hamilton, U. S. Army, and 1ST LT. James A. Hagan, U. S. Army, for Appellants.

LT COL. Thayer Chapman, U. S. Army, 1ST LT. Robert A. Forman, U. S. Army, and 1ST LT. Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Appellants were convicted of mutiny and of participation in a riot, violations, respectively, of the Uniform Code of Military Justice, Articles 94 and 116, 50 USC §§ 688 and 710. The convictions were approved by the convening authority, who reduced the periods of confinement adjudged, for reasons, and to an extent, which are immaterial here. Affirmance by a board of review followed, and this Court thereafter granted appellants' petition for review, limited, however, to two questions which we shall state as we deal with each.

Happily, an extensive review of the disturbing facts at the root of this case is not requisite to an understanding of the questions raised. Suffice it to say that appellants were prisoners confined at Fort Jay, New York. Following a drastic revision in local regulations, which sharply curtailed privileges theretofore enjoyed, enacted on a change of commanding officers, the prison population became seriously dissatisfied. This discontent erupted finally in the events directly underlying the present court-martial case. On the day in question a number of prisoners, including those accused, refused to enter on the day's work, and milled about exhorting others similarly to refuse. Finally, the scene flamed into a riot.

II

The first question to which we direct our attention has to do with whether testimony received at the █ trial regarding the alleged threatening of certain prosecution witnesses operated to prejudice the accused materially. The record discloses that trial counsel, on direct examination, inquired of two witnesses concerning threats said to have been received by them prior to the hearing. On motion of defense counsel, the law officer ordered these questions, together with the answers they elicited, stricken from the record for failure to connect them sufficiently with the accused. Subsequently, in his instructions, the law officer specifically and emphatically admonished the court to consider in their deliberations only testimony which had been duly admitted in evidence.

The question before this Court assumes arguendo that it was error to

362

receive the testimony respecting threats rejected in the trial court. Whether such testimony was error in this case —or would be error in all cases—we need not and do not now decide. Here the law officer did all that he could to remove the challenged testimony from consideration by the court: he ordered it stricken, and he instructed the court specifically to consider only testimony which had been admitted in evidence. We must acknowledge in all fairness that the damaging effect of evidence improperly received may not be cured —always and wholly—by an order directing that it be expunged from the record and disregarded. At the same time, we cannot ignore the fact that sound judicial administration requires that the lion's share of such errors be regarded as fully reparable through proper instructions. Improper examination on the part of trial counsel which is persistent and contumacious, and which permeates a record, is, of course, a horse of another color. But that is not this case. Cf. United States v. Valencia (No. 308), 4 CMR 7, decided June 3, 1952; United States v. On Lee, 193 F2d 306, 310. With the inception of the Uniform Code of Military Justice, trials by general court-martial became in spirit and for all practical purposes, identical with civilian criminal trials by jury. Appropriate, therefore, is the following language of the Court of Appeals for the Second Circuit in United States v. On Lee, supra, "The jury system is premised on the assumption that when the judge instructs the jury what evidence it may consider it will obey the instruction." 193 F2d at 310. And the reports contain a host of decisions to the same effect. In conclusion, it is our view that the error relating to the testimony respecting threats—if error it was—was not of such a nature that it might not be cured through instructions by the law officer. Moreover, we firmly believe that—considering the instructions of the law officer here, and placing the challenged testimony in its proper place in the total complex of evidence presented in this voluminous record of trial—there was no fair risk of material prejudice to the accused.

III

The remaining question relates only to the specification of Charge I alleging mutiny, and inquires whether the instructions of the law officer were correct as a matter of law. In the assessment of instructions, of course, we must not select critically among isolated expressions, but must "look at the charge as a whole and determine whether the court was clearly, fully, and fairly instructed." United States v. Roman (No. 191), 2 CMR 150, decided March 19, 1952; United States v. Shepard (No. 343), 4 CMR 79, decided July 25, 1952.

In the specification with which we are here concerned it was charged that the accused, acting in concert, and with intent to override lawful military authority, refused to report for work detail, and exhorted other prisoners to join in such refusal. The law officer, in his first instructional reference to the elements of this offense stated that they were:

"a—That the accused created violence or a disturbance, or that he refused in concert with another person or persons to obey orders or otherwise do his duty; and

"b—That he did so with intent to usurp or override lawful military authority."

Article 94(a) of the Code, supra, defining mutiny, states that:

"Any person subject to this code—

"(1) who with intent to usurp or override lawful military authority refuses, in concert with any other person or persons, to obey orders or otherwise do his duty or creates any violence or disturbance is guilty of mutiny . . . ."

It appears to us that this Article, in essence, defines but a single offense of mutiny, in the same manner that Article 121 of the Code, 50 USC § 715, defines but one offense of larceny. United States v. Aldridge (No. 686), 8 CMR 130, decided March 24, 1953. However, we need not decide that question here, for it is apparent in the instant case

**363**

that, even if the law officer, *in speaking as reported above*, was in error in presenting to the court descriptions of alternate crimes, so that it might convict accused on the basis of an offense not charged, the *total* instructional framework was not thus faulty. At two distinct junctures, subsequent in point of time to the use of the portion of the instructions quoted above, the law officer stated quite clearly and unequivocally that the proof required to convict in the case at bar was that each accused, with intent to override lawful military authority, and in concert with others, refused to engage in assigned work, and exhorted others to do the same. Obviously these statements were accurate. Accordingly, we do not hesitate to say that the court below could not reasonably have been misled by the reference—apparently inadvertent—to the creation of violence or disturbance, in view of the fact that the specific issues under the charge were subsequently, and on two occasions, stated and reiterated with accuracy. Repeated properly, as the issues were—and at a point nearer in time to the deliberations of the court than the challenged phrasing —we entertain no doubt that its members retired to consider their decision with an entirely correct conception of the elements necessary for conviction of the offense of mutiny.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.