UNITED STATES, Appellee

v.

J. C. MOLETTE, Sergeant First Class, U. S. Army, Appellant

3 USCMA 674, 14 CMR 92

No. 2735

Decided January 29, 1954.

Lt-Col Edgar R. Minnich, U. S. Army, 1st Lt John P. Mann, U. S. Army, and 1st Lt Paul Berger, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Joseph C. Chandler, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by a general court-martial of two offenses of carnal knowledge in violation of Article 120, Uniform Code of Military Justice, 50 USC § 714. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for a period of two years. The convening authority approved, the board of review in the office of The Judge Advocate General of the Army affirmed, and the appellant petitioned this Court for review of the finding and sentence. We granted this petition so that we might review the admissibility of an oral pretrial confession and a written summary of the same confession. Only the facts pertinent to the issue will be stated.

When the alleged offenses involved in this case were brought to the attention of the American military authorities, the accused was summoned for interrogation. At that time Warrant Officer Junior Grade George J. Peek, an agent of the Criminal Investigation Detachment, handed accused a photostatic copy of the 31st Article of the Code, 50 USC § 602, and requested that it be read by him. Accused read the Article and was then asked if he understood the meaning of the Article. The agent, in testifying to the answer he received, stated that accused replied that he understood it perfectly; that he need not say anything to the agent; and that he did not have to make any statement that would get him into trouble. Again, prior to being interrogated, the Article was read and explained to him by a Captain Dodd. Thereafter, accused gave to Mr. Peek a detailed oral confession concerning the crime. This statement was reduced to writing during the course of the interview, but the accused refused to subscribe to it after its completion. He, however, signed a printed preamble to the statement which contained the clauses that he had been informed of his rights

under Article 31 and that anything he said or wrote could be used against him should he be brought to trial.

Defense counsel contended at trial, and urge here, that the agent violated Article 31 by inadequately informing the accused of all of his rights under this Article. It is conceded by counsel that where an official interrogator reads Article 31 to an accused or permits him to read the Article, and thereafter relies upon a statement by the accused that he understands his rights, unless there are other facts and circumstances which compel reasonably a different conclusion, there is no cause for complaint. However, it is argued that here the accused by his answer indicated he did not understand fully all of his rights and the interrogator had a duty to explain further the Article and make plain to him the full extent of the rights granted by that Congressional enactment. It is said that our opinion in United States v. Williams, 2 USCMA 430, 9 CMR 60, supports that contention because, if Agent Peek did no more toward advising the accused than is suggested by accused's reply to the question of whether he understood his rights, a violation of Article 31 would be manifest.

In the *Williams* case, supra, we pointed out that "The interrogator is required to inform the accused (1) of the nature of the accusation; (2) that he need not make *any* statement regarding the offense; and (3) that any statement made may be used as evidence against him at a subsequent trial." In that case we were faced with a factual situation which established that the agent deliberately and intentionally misinformed the accused that he did not have a right to refuse to make any statement regarding the offense. That was misadvice and is not comparable with the situation which here confronts us.

This record affirmatively establishes that the agent informed the accused of the nature of the accusation; that he

**676**

placed in the hands of the accused the complete text of Article 31 of the Code; that accused read the Article; and that he thereafter stated he understood his rights. The facts and circumstances which counsel assert contradict accused's statement are that the record does not show he recited back to the agent all of the privileges granted to him by the Article. For us to sustain that contention, it should be made to appear that the accused intended to mention specifically the rights granted, and, that this reply was so inadequate the agent could be charged with knowledge that the accused was not sufficiently informed. In this record, we find no testimony by the accused that he made any statement other than one isolated out of normal context, or acted in a manner which would cause the agent to doubt his understanding. As a matter of fact he claims that he knew he did not have to make any statement and that he, in fact, did not say anything of an incriminatory nature. He denied categorically the testimony of the agent that the information in the confession was furnished by him, and after the statement was prepared he was well enough informed that he knew he was not required to sign. In addition, he told a pretrial investigating officer that he had been informed of his rights, and his testimony from the witness stand at the trial was uncertain and vacillating. Aside from that, a significant circumstance is that the testimony upon which accused relies to show he did not understand his rights was furnished by the agent. The agent was stating the substance of accused's reply to his question concerning an understanding of the Article, and it does not appear that the accused, when he replied, and the agent, when he testified, were doing more than generalizing. The mere fact that accused did not recite to the agent, word for word, all of the provisions of the Article simply does not cast doubt upon his statement that he understood all of his rights, and it does not saddle the agent with knowledge of any misunderstanding. He was not dealing with an immature youth with no experience and military training. The accused was a sergeant first class, 25 years of age, with 5½ years of service.

While we believe every interrogating agent should take the time, and expend the effort, to make certain that the rights guaranteed by the Article are understood by the suspect, we find no reasonable possibility that this accused was not informed within both the letter and the spirit of the Code. Lastly, both counsel seem to have overlooked the testimony that at 11 o'clock on the morning of the interrogation, the Article was again read to the accused by a captain and it was explained fully at that time. That evidence was not denied, explained, or disputed; and that interview took place some six to seven hours prior to the time the confession was given. It follows from the foregoing that there was sufficient evidence to support a finding that the accused was informed properly of his rights.

After Agent Peek had testified to the substance of accused's oral confession, his written account in narrative form of the substance of this confession was received in evidence as Prosecution Exhibit 2. As we have related, accused refused to subscribe to this written account after its completion. Defense counsel contend the exhibit was inadmissible because the accused never assented to the written statement as a written confession or adopted it as his own. To support the argument, counsel rely only on the evidence of accused. The Government counters this argument with a contention the record shows that Peek's written summary was furnished by accused, made in his presence at the time of the interrogation, and with minor exceptions was adopted by the accused. For reasons which will later appear, we need not resolve those conflicting disputes.

Accused also attacks the admissibility of the exhibit because the agent was able, from memory, to recite the substance of accused's oral confession. His theory is that this exhibit would be admissible only on the grounds that the document is a memorandum of past recollection accurately recorded. Manual for Courts-Martial, United States, 1951, paragraph 146a, pp 272–273. Such a memorandum is admissible only where the witness does not, at the pres-

**677**

ent time, actually remember some of the material facts or events recorded. United States v. Day, 2 USCMA 416, 9 CMR 46. Again, that is an argument which need not be considered as it is controlled by the holding in the succeeding paragraph.

Trial tactics and the manner in which the case was developed made the exhibit admissible. Agent █ Peek, when first called as a witness, limited his testimony to the manner in which the oral statements were reduced to writing. According to trial counsel this was not done for the purpose of introducing it in evidence, but to detail fully and completely the circumstances surrounding the giving of the oral confession. The witness asserted that the written document was a narration of the information given him by the accused and that after it was completed it was read by the accused. Defense counsel objected to the testimony of the oral confession being given because of a claim that it was not voluntary and he called the accused for the limited purpose of making a showing on that issue. Before delving into the voluntariness of the oral confession, defense counsel examined the accused on the written statement and he denied having furnished any of the information that was set out therein.

After the preliminary skirmishes were settled and the law officer had ruled the oral confession admissible, the agent was permitted to relate his version of that confession. Up to that point, the prosecution had not offered the exhibit, but counsel for the defense concluded to use it as a base for cross-examining the agent. He interrogated him with regard to whether it was not based in part upon statements of other witnesses. He probed into the ability of the witness to remember its contents and tested his memory as to its details. When the accused was called as a witness on the merits, his counsel had him identify the document. On direct examination he admitted he read it and signed the preamble but he denied he furnished the information set out therein. He later qualified that testimony by stating he may have furnished part of the facts which were related in the confession. He then related in minute detail the information he claims to have given to the agent, and it was in direct conflict with the oral confession and the contents of the written document.

Under well-known evidentiary principles, the tactics employed by defense counsel made the exhibit admissible. It could be used to fortify and rehabilitate the credibility of the agent and to impeach the testimony of accused. The document was prepared contemporaneously with the discussion. The evidence for the Government shows the agent would ask the accused a question and his answer would then be typed on the exhibit. There was a sharp dispute between the two individuals as to what was said, but both testified it was a memorandum made as a result of the conversation. The agent testified it truly and accurately reflected the story told at that time by the accused. It was, therefore, admissible in evidence to assist the court-martial in determining which of the two witnesses was entitled to belief. Accordingly, the various attacks made on the admissibility of the document and previously referred to herein must be rejected.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

BROSMAN, Judge (concurring in the result):

I concur in the result. I do not concur outright only because I am in some doubt concerning the appropriateness of some of the several reasons assigned by the majority for its approval of the admission of the unsigned paper said to constitute the confession of the accused. I quite agree, of course, that its admission did not constitute error.

II

I understand from the principal opinion that three grounds for admissibility were considered, and that two of these are assigned. The three were: (1) The document may come in as a memorandum under the doctrine of past recollection recorded. (2) The paper is

properly usable to rehabilitate the witness, Peek, by means of a showing of prior consistent statements, following his impeachment by the contradiction of the accused. (3) The document is admissible to impeach the accused as a witness through a demonstration of previous inconsistent statements.

The first of these grounds was rejected—and correctly, I believe. I am sure that this action was required by the provisions of paragraph 146a of the Manual—this, quite apart from any views I may hold on the question of whether the rule there laid down is the preferable one. Cf. Wigmore, Evidence, 3d ed, § 738. The remaining two seem to have been relied on by the majority in reaching its conclusion.

I incline to question the utility of the principle of impeachment here—certainly without more elaborate consideration of a number of problems which must be dealt with in any application of this theory to the facts of the instant case. Some of these are: (1) The fact that the unsigned document was not at all offered for an impeaching purpose. (2) The fact that no sort of proper foundation was laid—in that the accused does not appear to have been asked—in connection with the paper's admission, and with mention of time, place and person—if he had made the inconsistent statements embodied in the unsubscribed paper. (3) The fact that the court-martial was not instructed that the exhibit's contents were to be considered for an impeaching purpose only, and not for that of establishing the truth of the matters asserted therein. It may not follow, of course, that we are required to reject the exhibit for these reasons. Certainly, we are not in the position of the law officer at the time of tender. Rather we are acting after the fact, and our function is to determine whether the admission of the statement—granting error—resulted in prejudice to the accused. At the same time, numerous undeveloped questions are undeniably present—and I am uncertain at the moment about how some of them should be resolved.

Additionally, I am doubtful that the usual judicial thinking on the subject of rehabilitation and support, as such, will help us much. In fact, if we have here no more than an unadorned instance of attempting to rehabilitate the witness, Peek, through proof of prior consistent statements, following his impeachment by the contradiction of the accused, I am gravely afraid that the offered evidence of consistent assertions, as such, must be excluded under the general rule. See Wigmore, supra, § 1127; Manual, paragraph 153a.

### III

Rather than to rely on either of these, I would much prefer to find the reason for our decision in this branch of the case in its narrow facts. We find offered here evidence of a confession made by the accused. Two items of proof tending to establish this confession were offered: (1) the oral testimony of Peek, the CID agent; (2) a document purporting to contain a specific and incriminating narrative statement by the accused—after warning—based on answers to certain questions concerning the offense put to him by Peek. They are both admissible—and I see no basis for a claim that in offering both the prosecution was offensively accumulating evidence of guilt. Oral testimony establishing a confession by an accused is admissible without regard to the presence of a written confession—a rule which appears to reflect a variety of exception to the best evidence rule. Manual, paragraphs 140a, 143a. Similarly, despite the presence of testimony before the court-martial concerning the accused's verbal confession, a document prepared as a written confession is admissible—apparently an exception to any sort of general prohibition against the introduction in evidence of memoranda made by a witness who enjoys a present recollection of the events in question. Thomas v. United States, 15 F2d 958, (CA 8th Cir); Litkofsky v. United States, 9 F2d 877, (CA 2d Cir); Brown v. State, 247 Ala 288, 24 So2d 223; People v. Giro, 197 NY 152, 90 NE 432; State v. Adams, 339 Mo 926, 98 SW2d 632; cf. People v. Reed,

333 Ill 397, 164 NE 847. Indeed, that which has been reduced to writing and signed by the accused as his confession is regarded as having special weight and reliability. People v. Giro, supra; Wharton, Criminal Evidence, 11th ed, § 582; cf. Wigmore, Evidence, 3d ed, § 1179; Manual for Courts-Martial, U.S. Army, 1949, par 127*b*. In such a case the accused has indicated his assent to a particular form of words, and thus greater precision is afforded than through an account by a witness of an accused's wholly oral confession. Since the authorities appear to ▇▇▇▇ ▇ draw no distinction as to the admissibility of a written confession dependent on subscription by the accused, I conclude that a document prepared for the accused's signature, with his concurrence in the preparation, is admissible regardless of whether he finally signed the document. State v. Foulds, 127 NJL 336, 23 A2d 895, citing 22 CJS, Criminal Law, § 833; Wharton, supra, p 961; United States v. Hepner, 3 CMR(AF) 608; cf. Gray v. Commonwealth, 293 Ky 833, 170 SW 2d 873. Consequently, I would hold that the instant exhibit was properly admitted—without in any way binding myself in respect of an instance in which the offered document amounts to no more than an informal memorandum by the investigator embodying notes of an accused's confession of which the writer has a present recollection.