UNITED STATES, Appellant

v

THEODORE APRIL, Lieutenant (junior grade),
U. S. Naval Reserve, Appellee

7 USCMA 594, 23 CMR 58

No. 8804

Decided February 21, 1957

*Commander Guilbert W. Martin* argued the cause for Appellant, United States.

*Commander Earl C. Collins* argued the cause for Appellee, Accused.

Opinion of the Court

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused officer was convicted by general court-martial of two specifications of sodomy, violations of Article 125, Uniform Code of Military Justice, 10 USC § 925. He was sentenced to a dismissal. The convening authority disapproved one of the sodomy specifications; but he affirmed the other and approved the sentence. A board of review set aside the findings and sentence and ordered a rehearing. Whereupon the Acting The Judge Advocate General of the Navy certified the following questions to this Court:

"(a) Did the trial of the accused on the several charges and specifications of which he was found not guilty and the admission of evidence presented in support of those charges and specifications constitute prejudicial error as to the one offense for which the finding of guilty was approved by the convening authority?

"(b) In view of the deficiencies and errors in the record of trial enumerated by the Board of Review, was the Board authorized to order a rehearing?"

Little, if any, admissible evidence was introduced on the following: One of the sodomy specifications, an indecent proposal specification and three specifications laid under the general Article (Article 134, Uniform Code of Military Justice, 10 USC § 934) alleging an indecent, lewd and lascivious act with another (brushing his hand against a seaman's thigh), and two attempts to coerce a witness to withdraw his prior statements. The only remaining sodomy specification now before this Court rests on the testimony of one London that the accused committed an act of sodomy on him. Thereafter, to three different individuals, he denied the act. The other sodomy specification alleged the accused to be a passive participant in an act of sodomy performed upon his person by a then enlisted man by the name of White. Contained in the pretrial investigation papers is a statement by White to an agent of the Office of Naval Intelligence wherein he stated that he performed an act of oral coition on the accused. But when White was called by the trial counsel he denied the act. However, he readily admitted the prior inconsistent statement but insisted that it was untrue and a result of trickery upon the part of the intelligence agent. The law officer then permitted the trial counsel to call the intelligence agent for impeachment purposes. Further, the law officer—over the strenuous objections of the defense that no corpus delicti had been established—permitted five prosecution witnesses to be called, all of whom testified that the accused had admitted in their presence that White had performed an act of sodomy on him. The admissions were allowed subject to subsequent corroboration. The corroboration—along with further impeachment of White—was thereafter purportedly presented by way of White's pretrial statement. According to the trial counsel, White's statement was offered for two purposes: "One, for impeachment, and one as the extra judicial statement of an accomplice to corroborate the admissions" of the accused. Counsel for the accused, objecting, pointed out that if the witness admits making the inconsistent statement, no other proof that he made it is admissible. Nevertheless the statement was initially admitted into evidence as impeachment of White. The law officer gave a limiting instruction that "the document is being received solely for the purpose of showing the prior inconsistent statement of the witness for purposes of impeachment. It is not admissible as to establish the truth of the matters asserted in the document." Lacking a corpus delicti for all the alleged admissions with respect to the White sodomy specification, the Government was not satisfied with the limited purpose for which the statement was received. Therefore trial counsel reoffered White's statement "in corroboration of the statements made by Mr. April and testified to by these witnesses for the truth of the matters contained in the statement." Cited as authorities for this proposition were paragraph 140b of the Manual for

**597**

Courts-Martial, United States, 1951, which provides that, "A statement made by one conspirator during the conspiracy and in pursuance of it is admissible in evidence against his co-conspirators," and paragraph 153b (2) (c) of the Manual which states, "Proof of an inconsistent statement of a witness is not admissible to establish the truth of the matters asserted in the statement unless such proof may properly be received as evidence of a voluntary confession or admission of the witness." According to the trial counsel, White was an accomplice of the accused, hence the pretrial statement could be introduced for the truth of its contents under the above provision of the Manual and the corroboration as to the alleged act of sodomy with White would then be established. Over the objection of the defense counsel that there existed no allegation or proof of conspiracy and, further, that since White's statement to the Office of Naval Intelligence was made months after the event, it could hardly be said to be made in furtherance of a conspiracy, the evidence was admitted.

In his review for the convening authority, the district legal officer felt that the statement of White was admissible only for purposes of impeachment. But with respect to the Government's conspiracy argument, he had this to say:

". . . I find no elements of conspiracy in the evidence adduced under the first specification. Not every crime is a conspiracy. The actors here were co-actors in the perpetration of the alleged offense but there is no evidence of a plan and acts carried out pursuant thereto. Even under the law of conspiracy statements made by a co-conspirator after consummation of the offense are not admissible against the other conspirator (MCM 1951 para. 140b. Fiswick Vs. U. S. 329 US 211, U.S. Vs. Brown, 18 CMR 410). The confession or admission of a co-actor is not admissible as to the other actor, U.S. Vs. Brown, supra.

.    .    .    .    .

"For the foregoing reasons I am of the opinion that the evidence does not support the finding of guilty of specification 1 of Charge I and recommend that this finding be disapproved."

The board of review, when the case came before it, in view of the incompetent and inadmissible evidence, concluded that the accused had been denied a fair trial.

".  .  . We seriously doubt but that after having been exposed to all of the evidence—the competent, the incompetent, the hearsay coupled with the arguments and harangues of counsel—the triers were confused. We doubt but that the testimony of Phillips, the confession of White, the testimony of Read, Bitondo, Saunders, Hanson, Burton and Hass, could but fail to build up a compelling suggestion that the accused was a homosexual. If so, and we do not care to speculate on it, this suggestion born of the climate of the trial may well have produced the finding of guilty.

.    .    .    .    .

"We wish to make it exceedingly clear that our action is bottomed on the premise that fairness of trial is essential to a sound administration of justice. We are unable to measure the prejudice to the accused in his trial on specification 2 of Charge I occasioned by the complex of evidence adduced on the charges of which he was acquitted, and on the first specification of Charge I. The sum of the whole of the testimony—minus contradictions and minus impeachment was that the accused was an officer with homosexual tendencies. With this backdrop the triers considered all of the evidence on both specifications of the first charge. On each of those specifications the testimony was in sharp conflict and not without self-contradiction. It is not believed that any groups of triers of fact could act without passion and prejudice in such an atmosphere. In another trial denuded of the evidence as regards immaterial transactions with other persons which merely evidence a propen-

598

sity to commit sodomy, it is possible to proceed in a climate freed of those confusing factors. We think such action is necessary in order to preserve that essential fairness of trial which is the hallmark of the Federal and of the court-martial system of justice. See U. S. v. Lucas, 1 USCMA 19, 1 CMR 19."

The district legal officer was correct in his conclusion that there existed no evidence of a conspiracy ▮▮▮▮▮ and hence White's pretrial ▮▮▮▮▮ statement could not be admitted for the truth of its contents. Nor, as will be later discussed, should the statement have been admitted for the purposes of impeachment, after White admitted making the prior inconsistent statement. At best there was little or no admissible evidence upon which to convict the accused on the White specification. The Government knew or should have known that White had repudiated his prior statement, yet, by the pretense of impeachment and admissions without a corpus delicti, the prosecution was not only permitted to present White's pretrial statement but also some five witnesses who all testified that the accused had admitted participating in a homosexual act. It is not necessary to find any intentional bad faith upon the part of the prosecution to find prejudice. The prejudice to the accused is just as great in either event.

As previously stated, the convening authority, through his district legal officer, found that the evidence adduced in support of specification 1 was not only insufficient but inadmissible. Besides the lack of any evidence of conspiracy, however, ▮▮▮▮▮ White's pretrial statement made to the Naval Intelligence Agent should not have been admitted for the purpose of impeachment. White was called to the stand. He denied any misconduct with the accused but readily admitted making the inconsistent statement. The trial counsel was not justified thereafter in proceeding further. Such a backhanded method cannot be used to get inadmissible evidence before the court.

In United States v Narens, 7 USCMA 176, 21 CMR 302, the accused was tried for conspiracy to commit and committing an assault. When one of the prosecution witnesses disclaimed any knowledge of the details, the trial counsel produced a prior statement by the witness in which the latter described in detail the assault and identified the accused as one of the participants. The defense counsel objected on the ground that the prosecution was impeaching its own witness and in addition pointed out that the trial counsel was not surprised in that he knew what the witness' testimony was going to be prior to calling him. The law officer ruled that the witness was hostile and admitted into evidence the witness' prior inconsistent statement. The Court pointed out that obviously the trial counsel was not surprised by the witness' statement, remarking:

". . . It is arguable, therefore, that Turner was improperly called as a prosecution witness for the sole purpose of impeaching him by means of his prior inconsistent statement. Fong Lum Kwai v United States, 49 F 2d 19 (CA 9th Cir) (1931). See United States v Johnson, 3 USCMA 447, 452, 13 CMR 3. As the Court of Appeals said in Young v United States, 97 F 2d 200, 205 (CA 5th Cir) (1938), rehearing denied page 1023:

'. . . The overwhelming weight of authority however, supports the rule that though trial courts should, in the exercise of a sound discretion to prevent injury from surprise testimony of a hostile or corrupt witness, permit cross examination and impeachment by contradictory statements, it is never permitted to make of the rule an artifice by which inadmissible matter may be gotten to a jury through the device of offering a witness, whose testimony is known to be adverse, in order, under the name of impeachment, to get before the jury for its weighing, favorable ex parte statements the witness has made. To the relaxation of the rule against impeaching one's own witness by in-

troducing his ex parte statement in contradiction of his testimony, it is fundamental, we think, that the party offering the witness be really surprised at his testimony. Further, it is equally fundamental that the impeaching testimony be admitted not for the purpose of supplying what the witness was expected to, but did not, say, as a basis for a verdict, but only to eliminate from the jury's minds any positive adverse effect which might have been created by the testimony which has surprised the offerer.'

"Impeachment is permitted to enable a party to eliminate, as far as possible, the adverse effect of the witness' testimony. Its function, therefore, is to annul harmful testimony, not to present independent, substantive evidence. Turner denied that he recognized any of the persons engaged in the assault, even after he had been shown his statement. Under the circumstances of the case, it can reasonably be said that the risk that the statement would be given probative value by the court outweighed its value for impeachment. As a result, the statement would be inadmissible. State v Catsampas, 62 Wash 70, 112 Pac 1116; Crago v State, 28 Wyo 215, 202 Pac 1099; Kuhn v United States, 24 F2d 910, 913 (CA9th Cir) (1928), cert den 278 US 605, 49 S Ct 11, 73 L ed 533. In the Kuhn case, the Court of Appeals said:

'. . . The maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised. That being true, in cases, as here, where the witness gives no testimony injurious to the party calling him, but only fails to render the assistance which was expected by professing to be without knowledge on the subject, there is no reason or basis for impeachment under the rule. He has done no harm, and there is nothing to cancel or neutralize. While a party is not to be denied the right to attempt to prove his case by an unwilling witness, he is not permitted to get before the jury under the guise of impeachment, an ex parte statement of such witness, by calling him to the stand when there is good reason to believe he will decline to testify as desired, and when in fact he only so declines.' "

In United States v Brown, 7 USCMA 251, 22 CMR 41, a proposed defense exhibit consisted of notes taken by the assistant defense counsel. At the close of the interview the witness had the opportunity to read and sign the notes. But after conferring with the trial counsel, he returned to the defense counsel's office, scratched out his signature, and wrote a statement at the bottom of the notes that the latter were untrue. At trial the witness admitted on cross-examination that he had made a prior inconsistent statement which was included in the defense counsel's notes. The law officer refused to admit the notes as an exhibit for impeachment. Affirming the law officer's actions, the Court stated:

"The proper rule governing this point may be found in paragraph 153b of the present Manual, which deals with prior inconsistent statements and provides: 'If the witness admits making the inconsistent statement, no other proof that he made it is admissible.' Here the prior inconsistency which was at issue was brought before the court and the witness admitted both that he had made it and that it was true when made. Therefore, no other proof of the inconsistency was proper, and the law officer's ruling was correct."

Furthermore, since White's prior statement was inadmissible on any ground advanced at the trial, no corpus delicti was ever established for the testimony of the five witnesses. All testified that the accused admitted engaging in a homosexual act. The board of review was justified under the circumstances in finding this erroneous course of conduct at the trial prejudicial to the accused.

The second certified question makes inquiry as to whether or not the board was justified in returning ▮▮▮▮▮▮ ▮ the case for a rehearing. Article 66, Uniform Code of Military Justice, 10 USC § 866, provides that a board of review may weigh the evidence, judge the credibility of the witnesses, and determine controverted questions of fact and "If the board of review sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing." It appears here that the board exercised its statutory authority. Certainly we cannot hold as a matter of law that the board of review abused its discretion by finding, in view of manifest trial errors in this case, that the rights of the accused were substantially prejudiced, and that those errors could only be rectified by a rehearing before a court unencumbered by all the extraneous, erroneous and inadmissible evidence. This disposes of the certified questions.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

The accused was originally charged with six separate offenses, only one of which remains at this level. The law officer sustained a motion for a finding of not guilty as to one offense. The court-martial found the accused not guilty of three of the alleged crimes and guilty on the two sodomy specifications. The convening authority, upon recommendation of his staff judge advocate, disapproved the sodomy offense alleged to have been committed on the victim White but approved the finding and sentence on the London charge. Accordingly, the appeal to the board of review involved only the one offense and, as I read the board's opinion and the opinion of this Court, that finding is only assailable because a substantial quantity of incompetent evidence admitted in support of the other alleged offenses prejudiced the accused as to the remaining conviction. I have no disposition to question the prejudicial impact of much of the evidence but, aside from one statement made by White, it was competent and had the law officer given the proper cautionary instruction, a different result might be required.

The error of substance grows out of the efforts of trial counsel to prove the offense with White. There is no question but what White told a prior inconsistent story and that trial counsel had a right to impeach him. As the author Judge states, when ▮▮▮▮▮▮ ▮ White admitted having given the previous written statement which was at variance with his testimony, the document itself was not admissible. However, in laying the predicate for possible admission of the document, the substance of the statement was necessarily brought before the court-martial, and the same admission found in the writing would, in my opinion, have no measurable impact on the court-martial members. Furthermore, I am unable to ascertain ▮▮▮▮▮▮ ▮ certain in what way the law officer's error in holding that White's statement furnished the corpus delicti for the one specification would have a prejudicial effect on a separate crime. Obviously the statement could not support a conviction for the offense committed with White, but that finding was set aside by the convening authority and no longer concerns us.

The prejudice to the accused that I find in the proceedings springs from two sources which, when combined, denied the accused a fair trial. The first was the method of presentation selected by trial counsel. The second was the failure of the law officer to strike certain evidence and advise the court to disregard it when proof of the White specification failed. Those deviations from proper practice can best be discussed after detailing one additional fact. In addition to White's pretrial statement that accused had committed sodomy with him, the record contains the testimony of five witnesses that accused admitted to each that he had

engaged in such an act with White. It is permissible practice— ■ although not the best—to prove admissions or confessions before establishing the corpus delicti, but if an objection is raised, the law officer should require a statement from the prosecutor that the foundational evidence will eventually be produced. In this instance, that procedure was used and trial counsel promised to introduce independent testimony to show the probability that an offense of sodomy had been committed. For that reason, it is hardly accurate to say the evidence of the five witnesses was improperly admitted or incompetent at the time when it was offered. However, when testimony ■ is admitted upon a contingency, care must be exercised to ensure that either the contingency comes to pass or that the evidence is stricken. Here the admissions of the accused were insufficient to sustain a finding for they were not corroborated by other independent evidence. The error, therefore, arose when the presentation of evidence was completed, for at that time the law officer should have ordered all the evidence touching on the White specification stricken and instructed the court-martial to disregard it. Undoubtedly, had not the law officer and trial counsel erred in believing the corroboration was supplied by White's pretrial statement, the proper procedure would have been employed. However, when the case was submitted to the court-martial for deliberation, the members were led to believe that accused's admissions and White's statement were entitled to be considered by them without limitation. Obviously, that is a very effective way to place the accused at a distinct disadvantage. The court-martial was permitted to conclude improperly that one substantive offense had been proven, and when accused denied the act with White, his denial was in direct opposition to his alleged admissions to the five witnesses. If the court-martial members concluded that accused had committed one crime which he lied about—and they so found—then the probability that he falsified about the second crime would naturally arise in their minds. Proof of the latter offense was not very strong, and the error became critical.

At this time I need not consider whether the testimony which should have been stricken was so inflammatory that trial counsel should not have introduced it until the proper foundation had been erected. Neither need I decide whether an admonition to the court-martial not to consider the evidence would have cured the damage to accused's credibility. It may well be that in some instances cautionary instructions may not cure the prejudicial effect of evidence which should be disregarded when proof fails, but in the case at bar the evidence was not stricken and there were no instructions given. I am, therefore, at liberty to believe that the evidence was used by the court members to the prejudice of the accused.

This just happens to be one of those cases which is so close to equipoise on the facts that an evidentiary error of small moment would probably throw the scales of justice out of balance. The participant London had been granted immunity. His testimony was shaken by his own previous denials of the act. He admitted falsifying to the Naval authorities, and his story of the incident had a certain aura of improbability Under those circumstances, the massive evidence on the other specification would weigh heavily against a finding of innocence on the one now remaining. Certainly, one reading the record with objectivity would be convinced that the accused was prejudiced by the error and that a rehearing should be ordered.