UNITED STATES, Appellee

v

CLYDE REID, Sergeant, U. S. Army, Appellant

8 USCMA 4, 23 CMR 228

5

No. 8957

Decided May 10, 1957

*First Lieutenant Norman W. Polovoy* argued the cause for Appellant, With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

### Opinion of the Court

HOMER FERGUSON, Judge:

A general court-martial convicted the accused of drunken driving (Charge II), drunk and disorderly conduct in uniform in a public place and leaving the scene of an accident without rendering aid (specifications 1 and 2 of Charge III), absent without leave (Additional Charge I), and breaking restriction (Additional Charge II), in violation of Articles 111, 134, 86 and 95, Uniform Code of Military Justice, 10 USC §§ 911, 934, 886, and 895, respectively. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for one year. The convening authority approved the sentence but suspended the punitive discharge until the accused's release, or until completion of appellate review, whichever occurs later. The board of review affirmed without opinion.

The accused was operating a civilian automobile in Germany when he struck and injured a German civilian cyclist. The accused, at the time of the accident, was accompanied by two girl friends and a soldier friend. The error alleged in this case involves the admission into evidence of certain impeaching evidence directed at one of the accompanying girls. The girl in question made the following statement to a German policeman, immediately following the accident:

" . . . As we neared the corner of Hartmannstreet, before us I saw a nun with a bicycle, also traveling in an easterly direction on Luitpoldstreet. She was driving immediately left of the railroad tracks. The driver of our civilian car must have seen the traveling nun too late. He still tried to stop the civilian car, which however was too late. The bicycle rider was hit from behind by our civilian car." [Translation]

Later, at an investigation held pursuant to the provisions of Article 32, Uniform Code of Military Justice, 10 USC § 832, and paragraph 34 of the Manual for Courts-Martial, United States, 1951, she made the following statement:

" . . . On Luitpold Str we proceeded left from the railroad tracks, then we were approaching the corner of Hartmann Str. We rode on and

Sgt Reid said that he heard a noise and right away Sgt Reid said something had happened and we better turn around. We proceeded on down Drausnick Str. and turned around at the intersection of Von der Tann Str. We went back to the place, and a lot of people were standing around. Then Sgt Reid got out of the car and went up to where the lady was laying."

At the trial the Government called her as a witness and she testified that she did not see the cyclist before the impact. Upon her so testifying, the trial counsel declared her to be a hostile witness and further declared that she was an "indispensable party to the proof" and requested the "right" to impeach her. The defense counsel argued that there was no surprise in view of the sworn Article 32 investigation testimony, supra, and therefore trial counsel should not be allowed to impeach his own witness. It is apparent from the record that there was confusion on the part of counsel as to the difference between the right to impeach an unexpectedly hostile witness and the right to impeach an indispensable witness. The law officer ruled on this problem as follows:

"LAW OFFICER: May I see the Manual, please. (Trial counsel handed a Manual for Courts-Martial to the law officer.) If my understanding of the law is correct in such a case, the element of surprise is not necessary. If a party is compelled to call a witness whom the law or the circumstances of the case make indispensable, or if a witness proves unexpectedly hostile to the party calling him, the party is permitted to impeach the witness. In the latter case it must first appear that the party calling the witness has been surprised by hostile evidence given by the witness, *and that does not apply in this particular case.* I permit the attempted impeachment of the witness. The objections by the defense counsel are overruled." [Emphasis supplied.]

We granted hearing on the question of whether the law officer erred in allowing trial counsel to impeach the witness in question.

I

We are not involved here with the simple question of whether a party may impeach by prior inconsistent statement a witness for the opposite side. It is clear that this may be done after laying the proper foundation for the impeachment; e.g., United States v Molette, 3 USCMA 674, 14 CMR 92; United States v Freeman, 4 USCMA 76, 15 CMR 76; Burton v United States, 175 F2d 960, 965 (CA5th Cir) (1949). In this case we are faced with the problem of whether a party may impeach his own witness. In the case of United States v Isbell, 1 USCMA 131, 2 CMR 37, we indicated, while discussing paragraph 139b, Manual for Courts-Martial, U. S. Army, 1949, that the general rule adopted by that Manual was that a party could not impeach his own witness. This is the common-law rule which has its genesis in the adversary system and the concomitant theory that each party vouches for his witness' trustworthiness. Ladd, Impeaching of One's Own Witness—New Developments, 4 University of Chicago Law Review 69, 70 (1936). We also said that in the military this rule was subject to two limitations; viz., in cases of unexpected hostility and where the witness was "indispensable," he could be impeached. The inconveniences of the strict common-law prohibitory rule have for the most part been swept away by reforming statutes which allow impeachment of one's own witness in one form or another; e.g., Ark Stats § 28–706; Cal Code Civ Proc § 2049; NY Code Cr Proc § 8–a. These extensions have generally been restricted, however, in two important ways. The courts have usually required first, that the party seeking to impeach show that he has been surprised, and, second, that the testimony given has been harmful to his case; e.g., Young v United States, 97 F2d 200 (CA5th Cir) (1938); Mitchell v Swift & Co., 151 F 2d 770 (CA 5th Cir) (1945). The Uniform Rules of Evidence go much further, however, and in Rule 20 propose to abandon the prohibitory rule.

**7**

The Federal courts, following Federal Rules of Criminal Procedure, Rule 26, Evidence, 18 USC, and ▮▮▮▮▮▮ ▮ United States v Funk, 290 US 371, 54 S Ct 212, 78 L ed 369, are not bound by state laws of evidence or by any particular common law, but are guided by common-law principles as interpreted "in the light of reason and experience" and they have generally left the problem to the discretion of the trial judge.[1] United States v Maggio, 126 F 2d 155 (CA 3d Cir) (1942); United States v Michener, 152 F 2d 880 (CA 3rd Cir) (1945); Cf. Dickson v United States, 182 F 2d 131 (CA 10th Cir) (1950); Fields v United States, 164 F 2d 97 (CA DC Cir) (1947).

In one instance, for example, the trial court was entitled to accept the statement of the United States attorney that he was surprised by the testimony of the witness and thereupon exercise its discretion in permitting the examination as to prior self-contradictory statements. United States v Maggio, supra, page 159. This discretion and the exception to the rule is, of course, limited, and when it appears that the "impeachment" is for the purpose of getting otherwise inadmissible evidence before the court, for whatever substantive effect it might have, the discretion is abused. Kuhn v United States, 24 F 2d 910 (CA 9th Cir) (1928); United States v April, 7 USCMA 594, 23 CMR 58; see United States v Narens, 7 USCMA 176, 21 CMR 302. One of the main reasons behind the requirement of surprise is in fact to avoid this last-mentioned effect. Wigmore and others have criticized this limitation and such impeaching statements are not considered substantive evidence. Southern v Gray, 241 US 333, 36 S Ct 558, 60 L ed 1030; United States v Narens, supra; United States v April, supra; Wigmore, Evidence, 3d ed, § 1018(b). We now look to the present rule in courts-martial.

II

The President, pursuant to Article 36(a), Uniform Code of Military Justice, 10 USC § 836, has prescribed with regard to the present question that:

"The general rule is that a party is not permitted to impeach his own witness; that is, deliberately to attempt to discredit him. Inconsistencies which incidentally develop between witnesses for the same side are not such prohibited impeachments. The general rule is subject to a few exceptions. If a party is compelled to call a witness whom the law or the circumstances of the case make indispensable, or if a witness proves unexpectedly hostile to the party calling him, the party is permitted to impeach the witness. In the latter case it must first appear that the party calling the witness has been surprised by hostile evidence given by the witness." [Paragraph 153*b*, Manual for Courts-Martial, United States, 1951.]

It is immediately evident that this is the general common-law rule with two exceptions engrafted thereon. ▮▮▮▮▮▮ ▮ Because of the law officer's specific ruling in this case—that the prosecution was not surprised and that therefore the exception of unexpected hostility was inapplicable—is supported by the evidence, we will not as a matter of law upset that holding. United States v Volante, 4 USCMA 689, 16 CMR 263. It is also clear that his ruling of indispensability was erroneous. The law officer's position cannot be sustained on either theory of indispensability set forth in the Manual, i.e., that the law or circumstances make the witness indispensable. The witness was not essential to the proof of the case. It is undisputed that

---

[1] "Rule 26. Evidence

"In all trial the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

the accused was the driver of the vehicle which ran into and injured the cyclist and that he did not stop after the accident. Appellate Government counsel "readily concede" that the witness' testimony was not absolutely indispensable. They go further and state positively that, *in fact, it* (the witnesses' testimony) *was unnecessary.* The law of course does not make this particular witness indispensable by its own requirement. Furthermore, we do not accept the Government proposition that the President intended to adopt the so-called *res gestae* rule, which requires the prosecution to call all available witnesses. See Meeks v United States, 179 F2d 319 (CA 9th Cir) (1950); People v Elco, 131 Mich 519, 94 NW 1069 (1903). It is apparent, therefore, that the witness in this case was not rendered indispensable either by the law or the circumstances of this case. The law officer was therefore in error in his ruling that the testimony was admissible because the witness was indispensable.

### III

Error in the admission of evidence does not require reversal of a conviction unless the erroneous admission can be said to present a fair risk that the court-martial will be improperly influenced by the evidence in reaching its findings. E.g., United States v O'Briski, 2 USCMA 361, 8 CMR 161; United States v Narens, supra. See Article 59(a), Uniform Code of Military Code of Military Justice, 10 USC § 859. In the instant case the law officer specifically limited the effect of the evidence to its probative value relative to truth and veracity only. It did not have substantive value and we can presume that the court-martial followed its instructions correctly. United States v O'Briski, supra, and United States v Johnson, 3 USCMA 447, 13 CMR 3.

We believe, therefore, that considering the instructions of the law officer here and placing the challenged testimony in its proper place that there was no fair risk of material prejudice accruing to the accused through the erroneous admission of evidence and we therefore affirm the board of review's decision.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I do not concur outright because of three areas of disagreement. They will be mentioned but, because the case is controlled by the compelling evidence rule, they involve disputes about collateral matters and my ideas will not be developed. First, I believe the ruling of the law officer on his finding of no surprise is contrary to the evidence and could, if desirable, be reversed by us. Second, an incorrect test for application of the rule of impeaching an indispensable witness is used. Third, if a law officer rules correctly on the admissibility of testimony but assigns the wrong reason, we can go behind his deductions and sustain his ruling on the proper ground.