**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BOWLING GREEN, Kentucky, Appellant,**

v.

**Jesse Dean SAVAGE and Wanda L. Savage, Appellees.**

Court of Appeals of Kentucky.

Nov. 29, 1968.

Harold D. Ricketts, Harlin, Parket Ricketts Lucas & English, Bowling Green, for appellant.

G. S. Milam, James C. Milam, Russellville, for appellees.

EDWARD P. HILL, Judge.

Appellant, herein referred to as First Federal, loaned appellees, designated Savage, $12,000 secured by a note and mortgage on a farm and a small 3½-acre tract in Todd County, Kentucky. The residence and its contents on the farm were destroyed by fire. Savage filed this action against First Federal to recover an amount equal to the amount for which the property had initially been insured under a certain policy of insurance, arguing (1) that First Federal negligently misrepresented to Savage that his policy was in full force, and (2) that First Federal agreed to keep the policy in force and carelessly neglected to do so.

A jury trial resulted in a verdict for Savage for $11,250. From the judgment entered thereon, First Federal has appealed.

In January 1964, desiring to purchase a farm and finding it necessary to borrow some money with which to pay for same, Savage contacted one Earl McReynolds, a "finder" for First Federal, who arranged a loan of $12,000 for Savage.

First Federal contends McReynolds was not its employee; that he was not on its payroll and was merely a "finder" of loan prospects paid a fee for his services; and that McReynolds was not its agent and was unauthorized to bind it beyond the terms of the written contracts (note and mortgage).

Savage argues that McReynolds handled every detail of the loan exclusive of any participation by any other officer or agent of First Federal; that the latter held McReynolds out as its agent; and that McReynolds possessed apparent and ostensible authority to bind First Federal.

Savage first requested a loan of $11,000 from McReynolds. But after observing the residence on the farm, McReynolds advised Savage that a bathroom should be installed in the residence and that the loan should be increased to $12,000 so the extra $1,000 could be used to provide a bathroom. This was done.

Near the time the loan was closed on January 25, 1964, McReynolds advised Savage that it would be necessary for Savage to obtain a policy of insurance to cover fire and other loss on the residence and its contents; that he, Savage, was at liberty to obtain the insurance anywhere he desired, but that he, McReynolds, could and would obtain the insurance. Savage consented to the arrangement that McReynolds provide the insurance. This McReynolds did. Savage paid the first annual premium on the policy providing insurance for a period of three years. McReynolds first told Savage his monthly payments would be $90, but when the papers were presented to Savage, the monthly payments were fixed at $109.-98. McReynolds then explained that the additional $19 was to provide an "escrow" account to pay taxes and insurance. First Federal concedes in its brief that "McReynolds told appellees that insurance would be necessary, that the appellees would have to furnish the policy, pay the premium themselves for the first year, *and that the premiums thereafter* would be paid by the appellant out of the escrow account." (Our emphasis.)

On April 2, 1964, the insurance company wrote Savage a letter of cancellation of the policy and enclosed a check for unearned premium and mailed a copy of the letter of cancellation to First Federal.

Savage testified that on July 28, 1964, he went to First Federal's home office in Bowling Green, Kentucky, for the primary purpose of correcting an error in the account book, and while there he, Savage, stated to an unidentified person in the office that a part of his insurance had been canceled; that the person went to the file, found the policy and assured Savage that his insurance policy was in full force and gave Savage a written list of the items covered by the policy.

Savage continued to make monthly payments, including $19 to his escrow account, until December 1965. On January 22, 1966, three days short of one year after the second annual premium was due on the policy, the residence and its contents were destroyed by fire. Two days later Savage went to the home office of First Federal and reported the loss to Blackburn Stephens, its assistant vice-president. Stephens called the insurance adjuster to report the loss. Here is the testimony of Stephens relative to the cancellation notice:

"Q. I believe they [Savage] were very much surprised and disturbed when you told them there was no insurance coverage on the property?

"A. They appeared to be.

"Q. And in fact you yourself was surprised when you looked through there and found there wasn't any insurance, weren't you?

"A. That's correct."

* * * * * *

"Q. You actually took the telephone down and was in the process of calling when you discovered the letter of cancellation?

"A. I am not sure when I discovered it. I actually did reach the insurance adjuster and talked with him and during this period I discovered the letter also.

"Q. Was that the first knowledge that you had that there was any letter of cancellation or that there was any question about this policy being in full force and effect?

"A. That's correct."

First Federal defends on the proposition that the note and mortgage placed upon Savage the primary duty to "effect insurance" and argues that by terms of the note and mortgage, upon the failure of Savage to keep the property insured, it "may effect insurance," thereby giving it an "option" to provide insurance; that it did not exercise said option for which reason it is released from liability.

Disregarding for the purpose of discussion First Federal's admission in its brief that thereafter (after the first annual premium) premiums "would be paid by the appellant out of the escrow account," we think the collection of extra monthly payments to cover insurance renewal premiums constituted an exercise of First Federal's option to "effect insurance." When on January 25, 1965, it neglected to pay the renewal premium or obtain a new policy, it breached its duty to Savage and should bear the loss caused by such neglect of duty.

There is the additional circumstance we add for good measure. The undenied evidence that First Federal carelessly misrepresented to Savage in July 1964 that the policy in fact was not canceled. In this connection, it is noted that although Savage received notice of cancellation and a check for unearned premium and used the check, he, Savage, testified McReynolds sold them a "home owner's policy" which covered items other than fire insurance; that they were under the impression only certain items of insurance were canceled; and that they relied on representation of First Federal that the policy was still in force.

First Federal relies on Warrener v. Federal Land Bank of Louisville, 266 Ky. 668, 99 S.W.2d 817, 820, to uphold its theory that the contract giving it an "option" as to whether it would "effect" insurance is valid and enforceable. About this there is little doubt. Warrener stands for this theory but goes on to say:

> "Up to the point or time when the bank undertook to procure the insurance under its right of election, there could have been no responsibility, but when it set about to do so the provisions of the mortgage passed from being an optional right to an assumed duty."

We have hereinbefore pointed out that First Federal exercised its option and assumed its duty to "effect insurance."

First Federal next insists the trial court erred in submitting to the jury the items of personalty, for which the jury awarded $3,200, and damages to an outbuilding ($50). It reasons that in no event did the duty to keep the "property" insured include personal property or outbuildings.

The mortgage describes the duty to insure in this fashion:

> "(1) The mortgagor further covenants that * * * he will: Promptly * * * keep the improvements on said premises insured against loss by fire * * * with *extended coverage* in the sum of $12,000 Dollars, or to the insurable value of said improvements * * *." (Emphasis ours.)

The policy provided coverage as follows:

"SECTION I

| Coverages | Limit of Liability |
|---|---|
| A. Dwelling | $ 8,000. |
| B. Appurtenant Private Structures | $ 800. |
| C. Personal Property | $ 3,200." |

* * *

"SECTION II

G. Comprehensive Family Liability

| | | |
|---|---|---|
| 1. (Bodily Injury and Property Damages) | $25,000. | Each |
| 2. (Physical Damage to Property) | $ 250. | Occurrence |
| 3. (Medical Payments) | $ 500. | Each person." |

------◆------

We conclude that the phrase in the mortgage "with extended coverage in the sum of $12,000" included a duty to keep the personal property and "Appurtenant Private Structures" insured.

First Federal finally objects to Instructions I and II, using the same theory on which it seeks to avoid liability in its previous argument; that is, it had an option and did not exercise it. Having resolved this question adversely to First Federal, this objection to the instructions must likewise fail. The instructions fairly presented the issues.

The judgment is affirmed.

MONTGOMERY, C. J., and MILLIKEN, STEINFELD, PALMORE, and WILLIAMS, JJ., concur.