**PENCE MORTGAGE COMPANY,**
**Appellant,**

v.

**Kenneth G. STOKES and Shirley Stokes, his wife, and State Farm Fire and Casualty Company, Appellees.**

Court of Appeals of Kentucky.

Dec. 9, 1977.

John P. Kirkham, Hopkinsville, John S. Reed, Greenebaum, Doll, Matthews & Boone, Louisville, for appellant.

J. D. Kemp, Turner & Dixon, Hopkinsville, for appellee Stokes.

J. Thomas Soyars, Trimble, Soyars, Breathitt & Foster, Hopkinsville, for appellee State Farm.

Before HOWERTON, COOPER and REYNOLDS, JJ.

HOWERTON, Judge.

This is an appeal from two Summary Judgments. The net result of one judgment was to award the appellees, Stokes, $4,948.00 against the appellant for a personal property loss caused by a fire in the Stokes' home. The basis for the award was appellant's failure to pay the insurance premium necessary to provide coverage. The second judgment released the appellee, State Farm Fire and Casualty Company, from liability on the ground that the insurance company had properly cancelled the previous insurance policy.

In January 1971, Kenneth and Shirley Stokes purchased a home in Hopkinsville, Kentucky. In so doing, they assumed an existing V.A. mortgage which was serviced by the appellant. The mortgaged property, together with household contents, was insured by the appellee, State Farm Fire and Casualty Company, and the policy was assigned to the new owners.

The mortgage provided that the mortgagors would promptly pay the principal and interest as evidenced by the promissory note:

2. Together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, he will pay to the mortgagee, as trustee (under the terms of this trust as hereinafter stated) on the installment due-date of each month until said note is fully paid:

(a) a sum equal to . . . the taxes and special assessments next due . . plus the premiums that will next become due and payable on policies of fire and other hazard insurance on the premises covered hereby (all as estimated by the mortgagee, and of which the mortgagor is notified), less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such . . . premium, taxes and assessments will become delinquent, such sums to be held by the mortgagee in trust to pay . . . premiums . . . before the same become delinquent.

(b) The aggregate of the amounts payable pursuant to sub-paragraph (a) and those payable on the note secured hereby shall be paid in a single payment each month, to be applied to the following items in the order stated:

(I) Ground rents, taxes, special assessments, fire and other hazard insurance premiums;

(II) Interest on the note secured hereby; and

(III) Amortization of the principal of said note.

Numerical paragraph ten (10) set forth an additional covenant as follows:

10. He will continuously maintain hazard insurance . . . on the buildings and improvements . . . and except when payment for such premiums has heretofore been made under (a) of paragraph # 2 hereof, he will pay promptly when due when due any premiums therefor. Upon default thereof, mortgagee may pay the same.

The escrow account was used with this loan, and the monthly payments were sufficient to pay the principal and interest, and the anticipated taxes and insurance. The monthly payments were approximately $101.00, of which $14.11 was for taxes and insurance. The original policy covered the period from October 3, 1970 to October 3, 1971, for a premium of $33.00. Unknown to the appellant, Stokes requested the local insurance agent to increase the coverage which doubled the cost of the renewal premium when it was forwarded to the appellant.

Stokes made the required monthly payments from January through July 1971, but he paid nothing thereafter. On August 20, State Farm sent a premium notice to appellant for $66.00. Appellant finally determined that the bill was correct on or about October 1, 1971. The premium was due on October 3. The total escrow balance at that time was $46.52, and all other payments had long since been credited to principal and interest. There had been no payments since July to credit first to the payment of taxes and insurance.

On or about October 8, appellant initiated the process to pay the bill, but approximately one week later the bill had been rejected because of the insufficient funds in the escrow account. Appellant contacted the Veterans Administration to consider possible foreclosure and the payment of the insurance premium from the appellant's own funds.

In late October, a decision was made to obtain the insurance at the expense of the appellant. On October 29, State Farm mailed a cancellation notice stating that the policy would be cancelled if the premium was not paid by November 16. The existing policy required ten days' written notice to the mortgagee prior to cancellation. The notice was prepared by a computer in four copies. The local agent in Hopkinsville received his copy, but appellant denies receiving its copy. The time allowed seven days for delivery, in addition to the ten days' notice as required.

Appellant finally issued its check on November 26, but a fire damaged the Stokes' home and personal property on November 24. There is no dispute as to the amount of personal property loss.

Following the fire, appellant was required by the Veterans Administration to repair the property at a cost of $4,678.00. Subsequent to the repair, Mr. and Mrs. Stokes executed a deed to the Veterans Administration in lieu of foreclosure.

Kenneth and Shirley Stokes filed suit against appellant for the loss of their personal property. Appellant denied liability and counter-claimed for the repair costs of the mortgaged property. Appellant also filed a cross-claim against State Farm to compel payment under the old policy on the ground that it was never cancelled by giving the proper notice.

Depositions and interrogatories were added to the record. Both appellees separately moved for Summary Judgments which were granted as heretofore stated.

The trial court recited some but not all of the foregoing facts in its findings. It concluded that there were no genuine issues of any material facts concerning liability on damages, and determined that according to the holding in the case of *First Federal Savings and Loan Association of Bowling Green v. Savage,* Ky., 435 S.W.2d 67 (1968), appellant had "exercised its option to 'ef-

fect insurance' ", when it determined to advance the premium "on behalf of plaintiffs". The trial court also concluded that appellant breached its duty to pay the premium in time and should therefore bear the loss.

As to the appellee, State Farm, the trial court found that the insurance company had cancelled the policy for good cause (non-payment of premium); "that notice of the cancellation had been mailed to the defendant, Pence Mortgage Company, and that it, as a matter of law, is deemed to have received it since Pence cannot and did not introduce sufficient evidence to establish the non-receipt of the cancellation notice; . . . ." On the basis of such facts, and the additional point that Pence had actual knowledge of the overdue premium, the insurance company was relieved of any liability.

Appellant naturally contends that the trial court committed error in granting each of the Summary Judgments. First, appellant claims error for the holding that Pence failed to perform its duty to "effect insurance" on behalf of the personal property of Stokes. Secondly, error is claimed for the determination that the policy issued by the appellee, State Farm, was properly cancelled. Appellant seeks to have the judgments reversed and the case remanded for a trial on appellant's counter-claim against Stokes and its cross-claim against State Farm.

We agree with appellant's first contention. We find a vast and definite difference between the facts in this case and the factual situation in *First Federal Savings and Loan Association of Bowling Green v. Savage*, Ky., 435 S.W.2d 67 (1968), which was relied upon by the trial court in granting the Summary Judgment in favor of the Appellees Stokes. The trial court's findings of fact in the Stokes judgment were supported by the evidence and were correct as far as they went; but, the court totally neglected to consider that the said appellees had failed to make their required payments, and that there were insufficient funds in the escrow account to pay the required in-

surance premium. As a result, the trial court erroneously concluded that for Pence to decide to purchase insurance with its own funds for its own protection, Pence had elected to "effect insurance" on behalf of the appellees, thereby making it liable under the *Savage* holding.

We might add at this point that findings of fact are not necessary in summary judgments (7 W. Clay, *Kentucky Practice*, CR 56.03, Comment 8 (3rd ed. 1974)), and it was unnecessary for any party to request the trial court to consider the other essential facts as were omitted by the court (7 W. Clay *supra*, CR 52.04 and 52.01). Our concern is whether or not there were unresolved genuine issues of fact and whether or not the appellees were entitled to judgment as a matter of law. As to the judgment favoring the Stokes, we conclude that there were issues of fact and that they were not entitled to judgment as a matter of law.

In the *Savage* case, the mortgagor was notified by the insurance company that the insurance on his property would be cancelled. The mortgagee held an escrow account similar to the one in this case, and it was to make the premium payments when they became due. The mortgagor inquired of the mortgagee about the cancellation of the insurance, and was assured that it was still in effect. The mortgagor made all payments to the mortgagee for taxes, insurance, principal and interest, and when the mortgaged property was destroyed by fire and no insurance policy was in force to cover the loss, the court appropriately held that the Savings and Loan Association had taken it upon itself to "effect insurance", and would have to bear the mortgagor's loss.

The situation in this appeal presents nothing like the equities in the *Savage* case. Here we find the use of an escrow account, but we must not overlook the fact that the mortgage contract requires the mortgagor to make payments. It also places the primary responsibility for obtaining insurance on the mortgagor, and this would certainly come into being if the

required mortgage payments were not made by the mortgagor. The fact that the appellant did "effect insurance" in the first instance could have created a continuing responsibility in a *Savage* type situation, but the facts here are completely distinguishable. Furthermore, the mortgage contract specifically gave the appellant the right to purchase insurance, if the mortgagor failed to provide insurance as required. Also, the only insurance required by the mortgage contract was to cover "buildings and improvements". The fact that appellant's decision was to purchase the State Farm policy as billed and which included personal property coverage is of no consequence. The appellees were not aware of the decision and could not have relied on it. Yet, the Summary Judgment required the appellant to pay the appellees, Stokes, $4,948.00 for a personal property loss.

Surely, if Kentucky courts required an escrow agent to continue "effecting insurance" at its own expense when the property owner provides no funds and is aware of the default, we would see an immediate discontinuance of all escrow accounts for insurance in this jurisdiction. There is no evidence of fraud, deceit or misrepresentation concerning the continuation of insurance by the appellant in this case.

The Summary Judgment in favor of Kenneth and Shirley Stokes, dated June 19, 1975, must therefore be reversed and set aside, and this part of the case must be remanded for further proceedings.

▇ We find no merit in the appellees' argument that they were necessary beneficiaries of appellant's obligation to protect the Veterans Administration from any loss of the buildings and improvements. Appellees argue that the obligation required Pence to carry insurance and that the lapsed policy also provided protection for their personal property. The argument goes on to contend that the appellees should not have to purchase a separate policy for their personal property. As to this last point, we would agree only if the appellees paid the appellant for the type policy they expected or requested to have "effected" for them.

▇ The question regarding the obligation of Pence to the V.A. does raise the unresolved issue of whether or not appellant may recover from the appellees, Stokes, the sum of $4,678.00, which it was required to expend to repair the appellees' "buildings and improvements" to the satisfaction of the V.A. This issue was raised by appellant's counterclaim, and the questions of rights, duties and negligence of both parties must therefore be remanded to the trial court for a resolution.

The primary remaining question is whether the trial court committed error in granting a Summary Judgment approving the cancellation of the insurance policy by the appellee, State Farm. On this issue, we agree with the trial court that no genuine issue of fact exists and that, as a matter of law, appellee was entitled to judgment.

The essential parts of the judgment read as follows:

. . . [T]he court finds that the defendant, State Farm, had for good cause (non-payment of premium) cancelled its fire insurance policy involved in this litigation prior to the fire; that notice of the cancellation had been mailed to the defendant, Pence Mortgage Company, and that it, as a matter of law, is deemed to have received it, since Pence can not and did not introduce sufficient evidence to establish the non-receipt of the cancellation notice; and further, that Pence had heretofore received actual notice from State Farm that the premium was unpaid and was preparing to pay said premium to State Farm at the time of the fire but failed to do so.

Both parties agree that notice of cancellation was required. Appellant argues that appellee was required to "give" appellant at least ten days' written notice before cancellation, and that the requirement of "giving notice" makes receipt of the notice a condition precedent to any cancellation. The appellee, however, contends that the trial court was totally correct. There was adequate proof that the notice was mailed, that

mailing creates a presumption of receipt, that the presumption was not rebutted, that proof of mailing without rebuttal of the presumption constitutes "giving" notice, all of which is further supported by the fact that appellant knew the premium was overdue and the policy was subject to cancellation for non-payment.

Our first stop in attempting to unravel the issue over notice is to review the provisions of the insurance policy pertaining to cancellation. The general cancellation clause did specifically provide for "giving" notice. The requirement appears to apply to a cancellation during the term of the policy, as the sentence on such cancellation refers to a return of excess premiums. The provision reads as follows: "This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premiums above the pro rata premium for the expired time. . . ." The cancellation provision also provides that as to a mortgagee, ". . . [T]his policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation."

This policy also contained a "Standard Mortgage Clause" which provided for cancellation at any time "as provided by its terms, . . . ." This clause alone adds nothing to the previous quotations.

The policy was for a twelve month period, and it was to expire on October 3, 1971. The policy did contain, however, the following provision which was the real basis for any notice to appellant after the expiration date. The provision reads: "This policy will be renewed automatically . . . for each succeeding policy period thereafter and is subject to termination by this Company only after ten (10) days' written notice to insured and the mortgagee. The premium for succeeding policy periods will be computed at this Company's rates then current."

The cancellation requirements at renewal time do not use the term "giving" notice. The provision does not mention mailing, either, but some effort to communicate the

notice in writing is nevertheless implicit in the stated terms. The question to be decided at this time is what notification of cancellation is actually required by the terms of this policy at the time of an automatic renewal when the premium has remained unpaid.

■ Contract terms such as "giving" and "mailing" notice are well established in insurance law. The two words have significant differences as to the requirements for proof of receipt by a mortgagee or an insured. (See 64 A.L.R.2d 982, et seq.) When the policy requires "giving notice" to effect a cancellation, the insurance company has a strict burden of proof of actual receipt of notice by the intended recipients, as a condition precedent to any cancellation. Kentucky has not yet resolved the question of required proof for "giving notice," although generally, a presumption of receipt is recognized when mailing of a notice has been substantially proven. See, for example, *O'Daniel v. Michigan Mutual Liability Company*, 88 F.Supp. 339 (D.C.Ky.1950); *Globe Indemnity Company v. Daviess*, 251 Ky. 442, 65 S.W.2d 456 (1934); *Haffler v. McKinney*, 288 Ky. 782, 157 S.W.2d 92 (1942); and, *Beauchamp v. Com. ex. rel., Kentucky Bd. of Veterinary Examiners*, Ky., 243 S.W.2d 879 (1951).

■ The strict requirements of "giving notice" need not be applied in this action. When it is completely evident that an insurance company chooses to bind itself to a strict requirement of "giving notice" for cancellation of a policy during its term, the court should strictly enforce the terms of the policy. On the other hand, when the insurance contract does not use such a term for notice of cancellation at the expiration of the policy period, this court should not read into the policy the stricter requirements.

There have been several Kentucky decisions regarding notification of cancellation when the policy merely provided for "mailing" the notice. The *O'Daniel* case, *supra,* was one. Other cases include *Woodard v. Calvert Fire Insurance Company, et al.,*

Ky., 239 S.W.2d 267 (1951); *American Fire and Casualty Company v. Combs,* Ky., 273 S.W.2d 37 (1954); and, *Goodin v. General Accident, Fire and Life Assurance Corporation, Ltd.,* Ky., 450 S.W.2d 252 (1970). In each of the aforenamed cases, the policies were sufficiently cancelled when mailing had been proven.

Appellant also contends that the proof for mailing was insufficient. In support of such argument, appellant cites the *Goodin* case, *supra.* Proof of mailing was satisfied in that case by showing compliance with business usage, provided the usage relied upon embodied sufficient evidentiary safeguards to satisfy the need for protection of the affected party. The requirements were a postal receipt, a recorded certification, a return address on the envelope, and use of first-class mail. It is true what we do not find all of the foregoing factors in the case on appeal. It therefore raises the question of whether or not the court's finding that the cancellation notice was mailed is supported by substantial evidence. We conclude that the finding in this case is correct. The mailing occurred in the normal course of business and was accomplished by first-class mail. The notices of cancellation were prepared in quadruplicate by a computer and contained the correct addresses for both the appellant and the appellees, Stokes. The additional address of the Hopkinsville insurance agent was contained on the cancellation notice, and there is proof in the record that he received his copy of the cancellation notice.

The provision for cancellation at renewal time does not provide that mere mailing is sufficient to satisfy the requirement of "written notice," but we do conclude that the trial court not only correctly found that the cancellation notice was mailed, but that it appropriately used the presumption of receipt, and then correctly found that the presumption was not rebutted by the appellant. If we are to presume receipt upon proof of mailing, we shall also presume that the notice would have been received within seven days after mailing, which would have allowed for the ten days'

requirement to be effective before the 16th of November.

For the foregoing reasons, the Summary Judgment dismissing the cross-claim against the appellee, State Farm, is affirmed. This case is therefore affirmed in part, reversed in part and remanded for further action consistent with this opinion.

All concur.