RENDERED:  FEBRUARY 14, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0501-MR

EAGLE FURNITURE MANUFACTURERS, LLC                    APPELLANT


APPEAL FROM WARREN CIRCUIT COURT
v.            HONORABLE CHRISTOPHER COHRON, JUDGE
ACTION NO. 22-CI-00528


NAUTILUS INSURANCE COMPANY
AND IPFS CORPORATION                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE:  Eagle Furniture Manufacturers, LLC ("Eagle") appeals orders of the Warren Circuit Court granting summary judgment in favor of Nautilus Insurance Company ("Nautilus") and IPFS Corporation ("IPFS").  The central issue on appeal is whether a general commercial liability policy Eagle purchased from Nautilus and financed through premium finance company IPFS

was in effect at the time of Eagle's loss.  The circuit court determined the policy was properly cancelled and therefore not in effect.

Having reviewed the record and being otherwise sufficiently advised, we affirm the Warren Circuit Court.

## I. BACKGROUND

In June 2020, Eagle obtained a commercial general liability insurance policy from Nautilus and financed the policy through a premium finance agreement[1] with IPFS, a premium finance company.[2]  IPFS paid the annual premium to Nautilus, and Eagle was to make a single payment of $5,487.33 to IPFS on or before December 11, 2020.  The agreement between IPFS and Eagle included a power-of-attorney clause that gave IPFS authority, upon Eagle's default, to cancel the insurance policy, collect the unearned premiums from Nautilus, and apply them to the loan balance.  Parenthetically, Kentucky law incorporates certain notice-before-cancellation requirements into premium finance agreements.  *See* KRS 304.30-110.  One such requirement is that the premium finance company must mail to the defaulting insured a notice of intent to cancel that states a time by which default must be cured, and the stated time may not be

---

[1] *See* Kentucky Revised Statutes ("KRS") 304.30-020(2) (defining "premium finance agreement").

[2] *See* KRS 304.30-020(1) (defining "premium finance company").

earlier than the tenth day after the date the notice is mailed. *See* KRS 304.30-110(2).[3] After the expiration of that ten-day period, the premium finance company may effectuate cancellation by mailing a notice of cancellation to both the insurer and the defaulting insured. *See* KRS 304.30-110(3).

It is undisputed that Eagle did not make its payment by December 11, 2020. IPFS claims that on December 14, 2020, it consequently mailed[4] Eagle a notice which more than complied with KRS 304.30-110(2). Specifically, its letter informed Eagle of the amount due and its intent to cancel Eagle's policy unless payment arrived prior to December 29, 2020. It is undisputed that Eagle did not make its past-due payment by December 29, 2020, either. IPFS claims that on December 31, 2020, it consequently mailed notices of cancellation to both Eagle and Nautilus in compliance with KRS 304.30-110(3). Specifically, its letter informed both entities that pursuant to its authority as Eagle's power-of-attorney, IPFS was cancelling Eagle's policy effective January 2, 2021. Acting pursuant to

---

[3] KRS 304.30.110(2) provides, "Not less than ten (10) days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten (10) day period."

[4] In addition to claiming it mailed Eagle its notice on December 14, 2020, IPFS claims it also emailed Eagle the same notice on December 11, 2020. IPFS produced a copy of the email it purportedly sent, but Eagle denies receiving it. This point is not germane to our analysis, however, because KRS 304.30-110 only deems notifications effective if they are *mailed*. *See* KRS 304.30-110(2) and (3); *see also* 806 Kentucky Administrative Regulation ("KAR") 30:090 § 1(1) ("Insurance premium finance companies shall maintain written proof of mailing of the notices of cancellation required by KRS 304.30-110(2) and (3)"); 806 KAR 30:090 § 1(2) ("The written proof of mailing required by subsection (1) of this section shall **be a receipt provided by the United States Postal Service**.") (emphasis added).

IPFS's directive, Nautilus cancelled Eagle's policy effective January 2, 2021. Two days later, Eagle sustained a loss that would otherwise have been covered under its policy. The day after, Eagle tendered its past-due payment to IPFS. IPFS rejected Eagle's tender; and Nautilus, citing the cancellation of Eagle's policy through Eagle's attorney-in-fact, refused coverage.

Eagle then filed the instant suit in Warren Circuit Court, alleging that IPFS had breached its premium finance agreement by wrongfully directing Nautilus to cancel its policy in violation of "KRS 304.20-320(2) and/or 304.30-110"; that Nautilus had breached its insurance contract by wrongfully cancelling it in violation of "KRS 304.20-320(2) and/or 304.30-110"; and that these alleged breaches therefore entitled Eagle to not only coverage under the policy, but also additional damages from both IPFS and Nautilus for common law bad faith and violations of both the Kentucky Unfair Claims Settlement Practices Act[5] ("KUCSPA") and the Kentucky Consumer Protection Act[6] ("KCPA"). The theory underpinning each of Eagle's claims was, in sum, that even if IPFS had mailed Eagle the required statutory notices, Eagle had not actually *received* them.

---

[5] KRS 304.12-230 *et seq.*

[6] KRS 367.110 *et seq.*

IPFS and Nautilus answered and, a short while later, moved for summary judgment.  The circuit court granted them summary judgment.  This appeal followed.

## II. STANDARD OF REVIEW

> "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Coomer v. CSX Transp. Inc.*, 319 S.W.3d 366, 370 (Ky. 2010).  We review a trial court's summary judgment ruling de novo.  *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).  We must also view the record in a light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor.  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

*Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018).  Moreover, the party opposing summary judgment, "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Steelvest*, 807 S.W.2d at 481 (internal quotation [marks] and citations omitted).

In addition to summary judgment, we address questions of statutory construction and application which we also review de novo.  Our goal in construing each statute is to give effect to its plain meaning and unambiguous intent without rendering any part meaningless.  *Commonwealth v. Tapp*, 497 S.W.3d 239, 241 (Ky. 2016); *Bob Hook Chevrolet Isuzu, Inc. v.*

-5-

> *Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490-
> 92 (Ky. 1998). We presume the General Assembly
> intended neither an absurd nor an unconstitutional
> statute. *King Drugs, Inc. v. Commonwealth*, 250 S.W.3d
> 643, 645 (Ky. 2008).

*A.H. v. Louisville Metro Gov't*, 612 S.W.3d 902, 908 (Ky. 2020).

### III. ANALYSIS

Eagle makes three overarching claims on appeal: (1) the circuit court erred in granting summary judgment in favor of IPFS; (2) the circuit court erred in granting summary judgment to Nautilus; and (3) summary judgment was, in its view, premature. We address these claims in turn.

**1. The record supports the circuit court's summary dismissal of Eagle's claims against IPFS**.

As indicated, an alleged violation of "KRS 304.20-320(2) and/or 304.30-110" was the basis of each of Eagle's claims against IPFS. However, KRS 304.20-320(2) had no bearing upon Eagle's claims against IPFS because it only applies to "[a] notice of cancellation of insurance subject to KRS 304.20-300 to 304.20-350 by an insurer[.]"[7] Undisputedly, IPFS is not an *insurer*. Rather, it is a "premium finance company" within the meaning of KRS 304.30-020(1). As such, the dispositive issue is whether IPFS adduced evidence demonstrating it properly exercised its authority under the applicable statute, KRS 304.30-110, when it cancelled Eagle's insurance policy with Nautilus.

---

[7] *See* KRS 304.20-320(2)(a).

The statute provides:

(1) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section.

(2) Not less than ten (10) days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten (10) day period.

(3) After expiration of such ten (10) day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address.

(4) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation.

(5) Whenever an insurance contract is canceled in accordance with this section, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company effecting the cancellation for the account of the insured or insureds.

(6) In the event that the crediting of return premiums to the account of the insured results in a surplus over the amount due from the insured, the premium finance company shall refund such excess to the insured provided that no such refund shall be required if it amounts to less than one dollar ($1).

*Id.*

Relative to this statute, Eagle's only contention is that the evidence of record fails to demonstrate IPFS satisfied sections (2) and (3). To that point, Eagle argues IPFS's statutory notices were defective because, as it represents, it did not receive IPFS's KRS 304.30-110(2) notice at all; and it did not receive IPFS's KRS 304.30-110(3) notice until January 21, 2021. Stated otherwise, Eagle believes it was incumbent upon IPFS to demonstrate for summary judgment purposes that Eagle had *actual* notice, *i.e.*, that Eagle actually received IPFS's notifications prior to IPFS policy cancellation.

Eagle misreads the statute's plain language. Sections (2) and (3) do not obligate a premium financing company to ensure receipt of the notices. They merely obligate a premium financing company to *mail* the notices. Considering that plain language, a stricter requirement of actual notice cannot be read into the

statute. *Pence Mortg. Co. v. Stokes*, 559 S.W.2d 500, 506-07 (Ky. App. 1977) (explaining the requirement of "mailing" notice is not a requirement of actual notice; and that when an insurance contract does not use language requiring actual notice of cancellation at the expiration of the policy period, "this court should not read into the policy the stricter requirements").

Furthermore, the evidence of record supports that IPFS mailed Eagle the notices as required by the statute. To that effect, two letters are of record – one dated December 11, 2020, and a second dated December 30, 2020. Both indicate they were mailed to what Eagle represented in the premium finance agreement (also of record) was its address for purposes of any and all correspondence:

> Eagle Furniture Manufacturers LLC
> PO Box 238
> Bowling Green, KY 42102-0238

The letter dated December 11, 2020, recited it was a "notice of intent to cancel." In reference to Eagle's policy with Nautilus, it warned:

> Your payment is now due. If IPFS does not receive the amount due on or before 12/29/20 your financed insurance policies will be cancelled.

The letter dated December 30, 2020, recited it was a "notice of cancellation," recited a "date of cancellation" of "01/02/21." In reference to Eagle's policy with Nautilus, it stated:

> TO THE INSURED:

You are notified that the policies listed below are cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement which incorporates a power of attorney. This cancellation is effective on the date indicated below, at the hour indicated in the policy as the effective time. Funds received in this office on or after the cancellation date specified below will be credited to your account. The tender of such funds and their acceptance by IPFS does not constitute reinstatement of the account or of the scheduled policies.

IPFS's regional operations manager and authorized representative, David O'Connell, also provided an affidavit in which he referenced the two letters and swore to the following based on his personal knowledge:

5. IPFS uses an automated system to generate documents and notices. Each day, the system generates a file for Notices of Intent to Cancel and Notices of Cancellation that are slated to be sent out. In the case of mailed notices, the notices are created overnight and mailed the next day. In the case of email notices, they are emailed either the day the file is created or the next day.

6. On December 11, 2020, because Eagle had not paid the $5,487.33 owed to IPFS by the December 11, 2020 due date, the system generated a Notice of Intent to Cancel to be sent to Eagle regarding Nautilus Insurance Policy NN11333831. The Notice of Intent to Cancel informed Eagle that "[i]f IPFS does not receive the amount due on or before 12/29/20 your financed insurance policies will be cancelled."

7. The Notice of Intent to Cancel was physically mailed to Eagle at the mailing address provided for Eagle in the Premium Finance Agreement: PO Box 238 Bowling Green, KY, 42102-0238. A copy of the mailed Notice of Intent to Cancel is attached hereto as Exhibit B.

-10-

. . .

9. Eagle still did not make its outstanding payment between December 11, 2020 and December 29, 2020 and therefore remained in default under the Premium Finance Agreement.

10. IPFS issued a Notice of Cancellation to Eagle on December 30, 2020, informing Eagle that Nautilus Insurance Policy NN1133831 was "cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement which incorporates a power of attorney" and that the cancellation was effective on January 2, 2021. This Notice of Cancellation was physically mailed to Eagle at the mailing address provided for Eagle in the Premium Finance Agreement: PO Box 238 Bowling Green, KY, 42102-0238. The Notice of Cancellation was also sent to Kentucky Farm Bureau Insurance Agency Inc. The Notice of Cancellation is attached hereto as Exhibit D. A similar Notice of Cancellation was also sent to the carrier, Nautilus Insurance Co.

The record also contains two documents, consisting of two pages each, entitled "certificate of mailing – firm (domestic)." The documents indicate they are facsimiles of the December 2020 United States Postal Service Form 3665; they bear Pitney Bowes mail machine stamps and USPS postmarked/round-date stamps[8] of December 14 and December 31, 2020, respectively; they bear

---

[8] The USPS round-date stamps indicate they came from the USPS's Columbus, Ohio, "caller service." The USPS explains its Caller Service in relevant part as follows: "Caller Service is available for a fee if you require more than standard free carrier service, have more than five PO Boxes at one location, or receive more mail than can be delivered to the largest PO Box. It is available to residential customers as well as businesses. Caller Service is usually used by large businesses and institutions with many separate departments[.]" https://faq.usps.com/s/article/What-are-Caller-and-Reserve-Box-Services (last accessed Dec. 16, 2024).

-11-

signatures on the lines on those documents designated "Postmaster, per (name of receiving employee)"; they certify that on those respective dates, IPFS mailed several hundred letters; and further, the documents indicate that on those respective dates, IPFS mailed letters to Eagle at Eagle's stated address. IPFS asserted below that the letters it sent to Eagle, indicated in these certificates of mailing, were respectively the aforementioned "notice of intent to cancel" and "notice of cancellation."

Eagle has never disputed the authenticity of these certificates of mailing. It does not contend – nor do we find – that the circuit court erred in viewing these certificates, taken in conjunction with the other evidence discussed above, as the "written proof of mailing" required in this context. *See* 806 KAR 30:090 § 1(2). The extent of what Eagle adduced in response to the appellees' motions for summary judgment merely contested Eagle's *receipt* of those mailed notices,[9] which is not a material fact in this case. Eagle has presented nothing demonstrating IPFS failed to *mail* the notices; and absent that, Eagle has failed to support its claim that IPFS lacked the authority to cancel its insurance policy with Nautilus and therefore breached their contract when it did so; or that when IPFS

---

[9] In support of its claim that it did not timely receive actual notice of IPFS's notices, Eagle attached to its summary judgment response eight pages of what purport to be text messages from January 4, 2021, through February 4, 2021, between an individual identified as "Dean," purporting to be an agent of Eagle, and another individual identified as "Stacie." There, "Dean" provides hearsay that Eagle did not receive IPFS's December 11, 2020 mailing at all; and "Stacie" suggests "Dean" received IPFS's December 31, 2020 mailing on January 21, 2021, due to the "slowness of mail."

did so, it otherwise engaged in common law bad faith or committed any act in violation of the KUCSPA or KCPA – claims that likewise depended upon the breach of an underlying contractual obligation. *See Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 532 (Ky. 2022). As the circuit court also noted below, Eagle never could have asserted a viable claim under the KCPA – which allows private actions for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes"[10] – because all the contracts and services at issue in this matter were purely and undisputedly *commercial* in nature.

**2. The record supports the circuit court's summary dismissal of Eagle's claims against Nautilus**.

An alleged violation of "KRS 304.20-320(2) and/or 304.30-110" was also the basis of each of Eagle's claims against Nautilus. However, KRS 304.30-110 had no bearing upon Eagle's claims against Nautilus because it only applies to a "premium finance company" within the meaning of KRS 304.30-020(1),[11] and does not apply to insurers.[12] Undisputedly, Nautilus is an insurer, not a premium finance company.

With that said, KRS 304.20-320(2) had no application, either, because it only governs cancellations "*by* an insurer." (Emphasis added.) *Nautilus* did not

---

[10] *See* KRS 367.220(1).

[11] *See* KRS 304.30-110(1).

[12] *See* KRS 304.30-010 ("The provisions of this subtitle shall not apply with respect to: (1) Any insurer licensed to do business in this state[.]").

cancel Eagle's policy. *IPFS* did so in its capacity as *Eagle's* attorney-in-fact. As such, the only authority that governed this eventuality was the insurance policy that Nautilus issued to Eagle, which provided in relevant part:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

Eagle does not dispute that the power of attorney it provided IPFS authorized IPFS to act on its behalf as the "Named Insured" to cancel the Nautilus policy. Eagle has put forth nothing that would call into question the validity of the power-of-attorney it provided IPFS. And, in any event, nothing required Nautilus to question or affirmatively investigate the validity of IPFS's power-of-attorney, either. Simply put, Eagle failed to adduce any evidence that Nautilus breached any contractual obligation owed to it. Consequently, Eagle has failed to support its claim that Nautilus lacked the authority to cancel its insurance policy and therefore breached their contract when it did so; or that when Nautilus did so, it otherwise engaged in common law bad faith or committed any act in violation of the KUCSPA or KCPA – claims that likewise depended upon the breach of an underlying contractual obligation. *See Belt*, 664 S.W.3d at 532.

**3. Eagle has failed to demonstrate summary judgment was premature**.

Eagle asserts the circuit court prematurely granted the summary judgments in this matter. In support, it argues: "There was absolutely no discovery conducted in this case at the time summary judgment was addressed and ruled upon. The parties did not exchange written discovery, or schedule and take depositions." Br. at 8. However, apart from that – and several citations to appellate decisions generally cautioning against premature adjudication – Eagle offers nothing else on this point.

To be clear, summary judgment is not dependent upon discovery schedules. IPFS and Nautilus were entitled to move for summary judgment "at any time." Kentucky Rule of Civil Procedure ("CR") 56.02. And, so long as a party responding to such a motion has had an adequate *opportunity* to conduct discovery beforehand, the circuit court does not abuse its discretion in granting such a motion. *See Hartford Ins. Group v. Citizens Fidelity Bank Trust Co.*, 579 S.W.2d 628, 630 (Ky. App. 1979); *see also Blankenship*, 302 S.W.3d at 668 ("The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.").

To request additional time for discovery in response to a summary judgment motion, a party would need to provide an affidavit under CR 56.06

alleging genuine issues pertaining to material facts, or request "a continuance to obtain affidavits pursuant to CR 56.06." *Hartford Ins. Group*, 579 S.W.2d at 630-31. Eagle did nothing of that sort below; and on appeal, Eagle likewise provides no specific examples of what discovery could have been undertaken that would have affected the outcome had it been conducted. Furthermore, in *Hartford*, this Court deemed *six months* between the filing of the complaint and the entry of summary judgment to be a sufficient opportunity to either engage in discovery or inform the trial court why a ruling on summary judgment ought to be continued pursuant to CR 56.06. *Id*. Here, almost a *year* elapsed between the date Eagle filed its claims and the date the circuit court entered summary judgment in favor of IPFS and Nautilus.[13]

At most, Eagle's "prematurity" argument merely expresses Eagle's hope or belief that, if given more time, "something will 'turn up'" – which is wholly inadequate for summary judgment purposes. *See Benningfield v. Pettit Envt'l, Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005) (quoting *Neal v. Welker*, 426 S.W.2d 476, 479-80 (Ky. 1968)). Thus, we do not conclude that the circuit court prematurely considered the summary judgment motions at issue.

### IV. CONCLUSION

Considering what has been set forth above, we affirm.

---

[13] Eagle filed its claims against IPFS and Nautilus on May 18, 2020, and the circuit court summarily dismissed its claims on April 5, 2023.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Matthew J. Baker
Bowling Green, Kentucky

BRIEF FOR APPELLEE IPFS
CORPORATION:

Lindsay Tate Porter
Bowling Green, Kentucky

BRIEF FOR APPELLEE NAUTILUS
INSURANCE COMPANY:

John W. Walters
Kelly E. Alford
Lexington, Kentucky